# THE BARLOW BROTHERS COMPANY *vs.* WILLIAM W. GAGER.

Third Judicial District, New Haven, June Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

430

Argued June 8th—decided July 14th, 1931.

 
 

*John H. Cassidy*, with whom, on the brief, was *William T. Keavney, Jr.*, for the appellant (plaintiff).

*Nathaniel R. Bronson* and *Walter F. Torrance*, for the appellee (defendant).

MALTBIE, C. J. Early in 1927 Patrick H. Carroll had in course of construction in Waterbury a large apartment house. Because of lack of capital it became impossible for him to complete the building. Thereupon a meeting was held, at which he, the representatives of a large number of creditors having mechanics' liens or rights of lien upon the property, and the defendant, who is a practicing attorney in Waterbury, were present. The plaintiff was one of these creditors. As a result of the meeting an agreement was drawn up between Carroll, the defendant and the creditors, the principal provisions of which were as follows: Carroll agreed to execute and deliver to the defendant as trustee for the creditors a note secured by a mortgage upon the property in an amount equaling the total sum due them; they were thereupon to release all liens they held and waive all future rights of lien and to release all orders against future payments due under a construction mortgage upon the property; the defendant was constituted sole agent of Carroll for the purpose of contracting for and arranging the financing of the completion of the building, with authority to secure on Carroll's credit any additional construction loan necessary and to secure the same by a mortgage upon the premises and to arrange that this mortgage be given precedence over the mortgage made to him as trustee;

all moneys coming from the construction mortgage or from any other construction loan were to be paid to and disbursed by the defendant as trustee and this was also true of all income arising from the building, and the defendant was authorized to pay all charges incurred in connection with the building, all interest due on mortgages and also to "pay such sums as in his sole discretion shall be necessary for the improvement, repair, upkeep and running expenses" of the premises; when the building was completed the defendant was to negotiate a "regular second mortgage" upon the premises and use the proceeds to pay all loans secured to complete the building and "apply the balance thereof pro rata to the payment" of the mortgage made to him as trustee for the creditors; if not enough money to pay the creditors could be secured in this way, the mortgage made to him was to remain and he was to collect all income from the property and pay all expenses in connection with it until sufficient funds were accumulated to pay the mortgage in full "together with all expenses and reasonable charges as such trustee, which expenses and charges shall be added to the amount of this mortgage and paid by the said Patrick H. Carroll," with a further provision for the foreclosure of the mortgage by sale upon the request of two thirds of the creditors; if the note to the defendant was not paid, he was authorized to sell the property and distribute the proceeds; the defendant as trustee was given full power as to any matter which might arise not fully covered by the terms of the agreement "to act as in his discretion may seem best;" and finally he agreed to act as trustee "it being expressly agreed that said trustee shall not be liable or responsible for any error of judgment or mistake or act of omission or commission, either on his own part or the part of

any agent or attorney employed by him, or for anything save only his wilful misconduct."

The creditors or their assignees, including the plaintiff, signed the agreement and the defendant undertook the performance of his duties under it. He obtained a further loan of some $35,000 and caused it to be secured by a second mortgage, to which the mortgage made to him as trustee was subordinated. Work upon the completion of the building continued, necessitating the making of contracts with various parties for labor and material. One of these was the plaintiff. In the spring of 1928, however, a foreclosure action upon the second mortgage was brought, went to judgment and, no one redeeming, the property passed to the second mortgagee.

The complaint alleged in its first count that the defendant failed to cause the moneys coming from the first and second mortgages to be distributed in accordance with the agreement; made payments to certain designated parties and to himself in violation of it; himself induced the second mortgagee to foreclose its mortgage; refused to consent to a plan for the completion of the building which Carroll had prepared and which would have produced a sufficient sum of money to pay pending obligations and thus prevent a foreclosure; induced one of the contractors for the completion of the building to seek the appointment in the foreclosure action of a receiver of rents and urged that the appointment be made, against the opposition of the plaintiff, with the result that the rents from the building were not distributed under the agreement to the creditors signing it; caused this contractor to ask and urged the court to give the lien it had filed precedence over the mortgage he held as trustee; and failed to inform the creditors who signed the agreement of the pendency of the foreclosure action until

about two months before the law day, too late for them to effectuate a plan to redeem the property. The complaint also alleged that these acts or omissions on the defendant's part constituted "wilful misconduct." This count of the complaint then went on to state that had the defendant properly performed his duty as trustee the plaintiff would have been fully paid the amount due it, $11,125, at the time it signed the agreement, but as a result of his misconduct, it has been damaged to that amount.

The second count in the complaint sought to recover upon the plaintiff's contract for work in completing the building and alleged that the defendant requested it to furnish labor and materials "representing to it that he would receive and disburse sufficient money from mortgages and all income from rent from said property to pay the plaintiff for its materials and labor and that it would be paid therefrom" and, by an amendment, that "he further represented that if sufficient funds did not come into his hands from the mortgages and income, that he, personally, would borrow money and pay the plaintiff for said labor and materials"; and that he further stated that all completion contractors would be placed upon equal basis and paid by him without preference. It repeated the allegations that the defendant permitted money from the mortgages to be used for payments other than those of completion creditors and was instrumental in securing the appointment of a receiver of rents; alleged that the defendant failed to treat all completion creditors alike; and claimed a recovery of a balance due upon its contract, $3900. The third count was based upon the furnishing of labor and materials in the repair of the building at the defendant's request and claimed damages to the amount of $579.36.

The case was tried to a jury which brought in a ver-

dict finding for the plaintiff to recover upon each count of the complaint the full sum claimed with interest. The trial court set the verdict aside and the plaintiff has appealed.

Taking up the first count of the complaint, the plaintiff claims a liability upon the defendant's part because of failure to perform his obligations as an attorney. The duties the defendant was called upon to perform under the agreement were those of trustee and agent and while the fact that he was an attorney would be a circumstance to be considered in determining whether he properly performed his duties, his obligation is not primarily to be tested upon the basis of a professional employment. In its brief the plaintiff claims that the provisions in the contract restricting the liability of the defendant to wilful misconduct are void as against public policy. However that may be, it is too late now for it to make that claim. Not only did it base the first count of the complaint upon the contract but it based its right to recover upon the very provision which it now claims to be void. Moreover, the trial court in its charge, brought before us upon the appellee's bill of exceptions, made the defendant's liability depend upon a finding of such misconduct and in considering whether the jury reasonably, logically and lawfully reached their verdict, we must assume that it was based upon a finding of such misconduct. Wilful misconduct as used in this contract, as the trial court charged, could be found only if the jury reached the conclusion that the defendant had been guilty, not of negligence, not of a failure to exercise good judgment, but of an intentional wrongdoing, or misconduct which in its reckless disregard of the rights of the other parties to the agreement would be tantamount to such wrongdoing. *Gonier* v. *Chase Companies, Inc.*, 97 Conn. 46, 55, 115 Atl. 677.

We shall not discuss the general allegation that the defendant, in violation of the trust, failed to cause the moneys coming to him from the first and second mortgages to be distributed in accordance with the agreement. Under this allegation the plaintiff claims various acts of wilful misconduct on the defendant's part, but it would prolong the opinion too much to discuss them in detail. We find in them nothing which indicates error on the part of the trial court in setting the verdict aside. We shall confine our discussion to the specific allegations of misconduct alleged in the complaint, as they include the principal grounds upon which the plaintiff relies. The allegations as to these, as bare facts, were not in the main denied by the defendant, but he gave explanations of them which, not disputed in any material respect and substantiated in many respects by other evidence, particularly by exhibits, could not reasonably have been disbelieved by the jury.

The claims of the plaintiff had to do with the conduct of defendant as to certain expenditures made out of the fund in his hands or charges made as a result of the effort to complete the building, with his conduct in connection with attempts made to finance the completion of the building and with his conduct in relation to the foreclosure of the second mortgage. Of the expenditures alleged to have been made by the defendant in violation of the trust agreement, three were instances where Carroll, previous to the making of the trust agreement, had given orders drawn upon the first mortgagee for the payment of certain sums out of the moneys which were to come due under the mortgage, which orders had been accepted by it. Those to whom the orders were given were not creditors on account of the construction of the building. When the defendant learned of them he had already

started performance under the agreement and was confronted with a situation where he was called upon to use his judgment as to a matter which, as the agreement provided, had arisen, not fully covered by its terms. His conduct, after failing to secure waivers of the claims under the orders, in paying them out of the money coming due under the mortgage against which they were drawn, was not only not wilful misconduct but would appear to be the only reasonable course he could take unless the entire plan were to be abandoned.

One of the other expenditures by him which is questioned is a sum he drew out as payment for his own services. The complaint alleged this to amount to $2200, but the documentary evidence thoroughly substantiates his testimony that $1000 included in this sum was used for expenses incurred in performance of the agreement and that he in fact received only $1200. No claim is made, nor could well be, that this was an unreasonable amount for him to charge. He had no personal interest in the completion of the building and payment of the creditors, and certainly everyone concerned must have known that he was to be recompensed. The contract does not in terms specify how he was to be paid except for the provision that should it prove impossible to raise sufficient funds upon the completion of the building to pay the creditors he was to collect all income and pay all expenses until such time as sufficient funds could be accumulated to pay the mortgage with all expenses and his own reasonable charges, which were to be "added to the amount of this mortgage and paid by the said Patrick H. Carroll." Practically interpreted this could only mean that the defendant was, in the contingency specified, to collect the income and apply it, after the payment of the expenses of operating the building, to discharge

the claims of creditors and his own reasonable charges, the ultimate liability falling upon Carroll as owner of the building. While restricted in its operation, this provision indicates the intent of the parties that the property coming into the defendant's hands as trustee should be the primary source of payment to him for services. Nothing in the evidence indicates that he was to look in the first instance for his compensation to Carroll, any more than to the creditors, but the silence of the agreement as to how he should be paid, except in the one contingency specified, indicates that the usual rule would apply and his compensation would be a charge upon the funds in his hands as trustee. *Bissell* v. *Butterworth,* 97 Conn. 605, 615, 118 Atl. 50. At the time he withdrew the money he had been actually engaged in performing services under the contract for nearly a year and no good reason appears why the payment to him of the amount he withdrew was not proper at the time it was made.

The defendant did pay to one of the creditors signing the agreement the sum of $200 upon his claim. This payment confessedly did not accord with the defendant's obligations under the agreement. It was made, however, as a result of representations to him that the creditor was in financial straits because of the death of his wife and, however far short the payment fell of representing a lawful expenditure, one cannot but sympathize with the conduct of the defendant. And of this, as of the other disbursements, it is true that the plaintiff had no direct interest in them, even in the proportion of its claim to the total of the claims of all creditors. The most that it could claim would be that, had the disbursements not been made, the building would have been completed and its claim paid. But the evidence wholly fails to support that contention. Nothing in the least indicates that, had these

expenditures not been made, the foreclosure of the second mortgage would or could have been prevented and it was that which put an end to the whole plan. Granted that the payment of the $200 was illegal, that it caused any damage to the plaintiff does not at all appear.

The allegation that Carroll's plan of financing the completion of the building failed because the defendant refused to consent to it is entirely lacking in proof. Why it failed does not satisfactorily appear. The plaintiff's brief refers to certain testimony in regard to the matter given in the absence of the jury which we of course disregard. Carroll did testify that the defendant told him that the plan would probably not go through because of the foreclosure proceeding. But it does not appear that the defendant placed any difficulties in the way of its completion, and it does appear that the plan was placed before a meeting of the creditors, was discussed, but no action was taken by them.

The loan secured by the second mortgage became due in six months after it was made. After the expiration of this time the situation developed in such a way that the defendant was contemplating a foreclosure of the mortgage made to him as trustee. Carroll, however, showed a disposition to contest the amounts claimed by the creditors as stated in the agreement. If the defendant foreclosed, these claims would apparently have to be contested in court with all the delays incident to such proceedings. Meanwhile the second mortgagee could not be expected to hold its overdue mortgage in abeyance. If the defendant did foreclose, that mortgage would still be a prior claim on the property and have to be discharged. If the holder of that mortgage foreclosed, the defendant as trustee would be given a law day when he might re-

deem by paying the mortgage and any question as to the amounts claimed by the creditors would thereafter be determined without jeopardizing the efforts to complete the building under the agreement. The conduct of the defendant in suggesting to the second mortgagee that it proceed with its foreclosure rather than bring one himself could not reasonably be held to be wilful misconduct, indeed seems to have been an exercise of sound judgment upon his part. It is difficult to see how a foreclosure by the second mortgagee in any way placed the plaintiff in a worse position than it would have been in, had the defendant himself started a foreclosure of his mortgage. The alleged statement of the defendant made later that he regretted the course he had taken, even if the jury believed the evidence, could be at most interpreted as the result of circumstances later developing which gave a different aspect to the situation than the defendant had anticipated.

It is true the defendant failed to notify the creditors of the bringing of the foreclosure until after judgment had been rendered and when only about two months remained before the law day. But it is undisputed that in the interval Carroll was attempting to arrange a plan to finance the whole construction program by placing new first and second mortgages on the building and was apparently succeeding, having secured commitments for such mortgages. There would seem to have been no need to inform the creditors of the foreclosure action in such circumstances, as they certainly would not have undertaken independent plans to redeem the mortgage in foreclosure when their interest would be protected under the plan which Carroll was apparently successfully working out. Moreover, the only course suggested in the evidence which the creditors might have taken was by themselves ar-

ranging for the redemption of the property; it is un-
questioned that they were concerns of financial ability;
and, viewing the situation from the defendant's posi-
tion at the time, as we must, it would reasonably ap-
pear to him that two months would afford them ample
time to work out a plan of this nature if they desired
to do so. The plaintiff also claims that the bringing
of the foreclosure proceedings prevented the success
of Carroll's plan for financing the completion of the
building. However that may be, the correspondence
and exhibits establish the fact that, when the fore-
closure was started, Carroll had secured no commit-
ments for new mortgages and that he was immediately
informed of the fact when the mortgagee wrote the
defendant that it was placing the mortgage in the
hands of its attorneys to bring proceedings. The de-
fendant cannot be held responsible if, knowing this,
Carroll secured the commitments without informing
the parties giving them of the imminence of fore-
closure proceedings or for the subsequent failure of
the plan because of those proceedings; nor would there
seem to have been occasion for the defendant to in-
form Carroll when the writ was actually served, in
view of the information already given him. There
could not reasonably have been found any intentional
wrongdoing of the defendant in his failing to inform
the creditors of the foreclosure before he in fact did
nor any misconduct on his part which was the equiva-
lent of such wrongdoing.

With regard to the conduct of the defendant in
favoring the appointment of a receiver of rents of the
building in the foreclosure action, not merely was
there undisputed testimony that such a step was dis-
cussed with the creditors before it was taken and ap-
proved by them, among them the plaintiff, but this
is affirmatively alleged in the answer and the plain-

tiff has admitted it by not denying the allegation. The plaintiff is hardly in a position now to complain of the action of the defendant in this regard. The priority given one of the finishing creditors in the foreclosure proceeding over the defendant's mortgage only resulted in changing the order of the law days and is of no consequence in view of the fact that the judgment was for a strict foreclosure and neither party redeemed.

But, had the plaintiff established wilful misconduct upon the part of the defendant in one or more of these ways, it still would remain for it to prove before it was entitled to a verdict that this had resulted in damages to it. As we have said, it does not appear that the claimed unlawful disbursements of the defendant affected the foreclosure of the second mortgage or that the plan of financing proposed by Carroll failed by reason of anything the defendant did or failed to do. Had the creditors redeemed the second mortgage they would have thereby increased the obligations against the property held by them, leaving the situation otherwise largely unchanged. That the matter would then have worked out so that they would ultimately have secured the amount of their claims, no witness presumed to say and there was no reasonable basis upon which the jury could conclude that this would be even a probable result. The record suggests only two ways in which the jury could have reached the conclusion that the plaintiff proved damages. One would be upon the assumption that the property after redemption by the defendant might have been sold. There was testimony by Carroll that the fair market value was $600,000. It was undisputed, however, that the property was from the time of the foreclosure in July, 1928, until the time of trial in October, 1930, on the market for sale through a real-estate agency, at a price which was finally reduced to $535,000, but no

buyer could be found. It was also undisputed that, at the time of the foreclosure, there were charges upon it, including the mortgage being foreclosed, of more than $487,000, without taking account of claims of finishing creditors amounting to not less than $13,000. The amount of the claims of the creditors signing the trust agreement, without interest, was about $135,000. Even upon such an improbable basis as the realization of $600,000 by sale of the property, the amount of the loss of the plaintiff, which would have to be pro rated with the other creditors, would be substantially less than the verdict rendered. The only other possible ground for the jury's conclusion that the plaintiff was damaged by the conduct of the defendant would be upon the assumption that after redemption by the defendant a sufficient sum might have been realized by means of holding and operating the building ultimately to pay the claims of the creditors. Under the terms of the first mortgage $15,000 upon the principal had to be paid each year. There was evidence that the agent in charge of the building after the foreclosure paid to the owner a net income, after deducting expenses of operation but not interest upon mortgages, taxes or insurance, from August, 1928, to December, 1929, inclusive, to the amount of about $1400 a month. Before the creditors could receive anything under the trust agreement, provision would have to be made to satisfy the sum paid to redeem the property and the amounts due finishing creditors. Unless some unforeseen change in circumstances should arise, a finding that the creditors in this way would be able to recover anything upon the claims they held against the building when the agreement was made, had the second mortgage been redeemed, would be based upon the merest speculation. In any aspect of the case, it is obvious that the verdict of the jury upon the first

count was not one which they might reach reasonably, logically and in accordance with the rules of law.

The plaintiff's claim under the second count now is that the defendant upon his own responsibility and credit requested it to perform services in the completion of the building. But the complaint, fairly interpreted, does not allege such a cause of action. It states that the defendant "as trustee undertook the financing and completion of said apartment building" and was in control of it, that he requested the plaintiff to furnish labor and materials and made representations that he would receive and disburse sufficient money from mortgages and rentals of the property to pay the plaintiff and it would be paid therefrom, and further, if sufficient funds did not come into his hands in this way, he would borrow money to pay it, with certain other alleged representations, and that the plaintiff relying on the statements of the defendant furnished the labor and materials. These allegations fell very far short of alleging an agreement with the defendant to furnish labor and materials upon his own credit. As far as the situation was disclosed upon the plaintiff's own evidence it goes no further than this: The trust agreement contained a provision that the defendant should be the sole and exclusive agent of Carroll in contracting for and arranging the financing of the completion of the building and the relationship so established was of course known to the plaintiff. In fact it made a written proposal to Carroll to do the work, and after the agreement was made, this was accepted by Carroll. The defendant caused to be added to it the word "Noted," followed by his signature as trustee, but, called as a witness by the plaintiff, he testified that this was done merely to give the contract standing as one to be paid under the trust agreement. It was in connection with the execution of this contract

that evidence was offered of representations as to the payment for the work and materials substantially as stated in the complaint. The directions subsequently given by the defendant as to the performance of work went no further than he would naturally go in carrying out his obligations under the agreement. Any request made by the defendant to the plaintiff to furnish the materials under these circumstances could not be reasonably interpreted otherwise than as made in the performance of the former's obligation under the agreement, nor could the representations, if made, reasonably be given the interpretation that they were promises that, acting under the agreement, he would see that the plaintiff was paid. The contract was a contract with Carroll and the statements attributed to the defendant would be at most promissory representations, which, in the absence of allegations or proof that they were made with an intent not to perform them would not be actionable. *Sallies* v. *Johnson,* 85 Conn. 77, 80, 81 Atl. 974.

The third count of the complaint is based upon the performance of services by the plaintiff in the repair of the building at the request of the defendant. Plaintiff's evidence developed this situation: Carroll sent for a representative of the plaintiff because of certain difficulties with the heating system; they discussed the matter and Carroll said he could not give the plaintiff the work, as he was not in control, but would have to get the defendant. Accordingly the defendant came and the matter was explained to him. The plaintiff's representative told him that its officers would want to know how it was to be paid for the work and thereupon the defendant told him to go ahead, "I will pay you." The plaintiff performed the work and subsequently rendered a statement of it as a charge against Carroll. Later it filed a mechanic's

lien for the charges which stated that they were rendered under a contract between it and The Trinity Apartment, Incorporated, a corporation which had been formed by Carroll to take over his interest in the building. The plaintiff knew that the only possible financial interest the defendant had in the matter was such reasonable compensation as he might receive for the services he performed. It had no reason to expect that he would intend to assume personal liability for services the charges for which are alleged to amount to nearly $600. It knew his attitude toward expenditures incurred in the completion of the building from the occurrences at the time the contract alleged in the second count was made. As has been already pointed out it must be assumed to have been fully apprised of the relationship of the defendant to the performance of the work in completing it. It sent its representative to the building at Carroll's request and might properly have wanted assurance that it would not have to look alone to him for payment of its charges. Unless the statement by the defendant that the plaintiff was to go ahead with the work and he would pay for it could be reasonably interpreted as indicating an intent on his part to assume a personal liability for it, there would be no basis for a conclusion that he meant more than that he would pay for it as one of the items in the completion of the building under the trust agreement. The latter interpretation is the only one which could reasonably be placed upon the defendant's statement and that this was the plaintiff's understanding is thoroughly substantiated by the fact that it made its charges against Carroll and by the terms of the lien it filed, which was based upon a contract with the corporation he had formed to take over his interest in the building. There was no reasonable basis for a conclusion by the jury that the de-

fendant was personally liable for the labor and materials.

The action of the trial court in setting the verdict aside was correct. The defendant has filed a bill of exceptions which we must briefly discuss. The plaintiff claimed the case for jury trial. The defendant moved that it be struck from the jury list because the first count presented issues properly cognizable in equity and that the issues arising under that count be first tried, which motions the trial court denied. The cause of action stated in the first count was not in any sense an effort to enforce a trust or to impress property with a trust but was one based upon the personal liability of the defendant for his acts as trustee and sought a recovery of damages for the breach of his duty under the terms of the agreement. As such it was properly regarded by the trial court as an action at law. *Sherwood* v. *Saxon,* 63 Mo. 78; *O'Neil* v. *Epting,* 82 Kan. 245, 108 Pac. 107; *Eadie* v. *Hamilton,* 94 Kan. 214, 216, 146 Pac. 323; *Snyder* v. *Parmalee,* 80 Vt. 496, 500, 68 Atl. 649; *Lathrop* v. *Bampton,* 31 Cal. 17, 23.

The bill of exceptions seeks to have us review the failure of the trial court to give certain requests to charge made by the defendant. To a large extent these have been answered, inferentially at least, by what we have said, or present questions unlikely to afford difficulty upon a new trial, if there is one. The defendant asked a charge that he was entitled to the benefit of a presumption that he had discharged his duty until the contrary was shown. As we have noted, the action is not against the defendant for breach of his obligations in his professional capacity as attorney but was against him as trustee under the agreement. Courts have recognized a presumption that where the acts of a trustee are equally open to two constructions, one

rightful and the other tortious, the former will be accepted. *Attorney-General* v. *Norwich,* 2 M. & Cr. 406, 422; *M'Ginn* v. *Shaeffer,* 7 Watts (Pa.) 412, 415. It has also been said that, in an action for a breach of trust there is a presumption that the trustee has acted properly until the contrary is proven; *Maccubbin* v. *Cromwell,* 7 G. & J. (Md.) 157, 167; but such a presumption goes no farther than to place the burden of proof upon the person alleging the breach; *Vincent* v. *Mutual Reserve Fund Life Asso.,* 77 Conn. 281, 290, 58 Atl. 963; and if a sufficient charge upon that burden is given, no good purpose would be served by referring to such a presumption. *Vincent* v. *Mutual Reserve Fund Life Asso., supra.*

The defendant also brings before us the ruling of the trial court admitting the alleged statement of the defendant offered in support of the third count, in which he told the plaintiff's representative to go ahead with the work, "I will pay you." Whether by this he meant to assume a personal liability rather than one based upon an intent to deal with the matter in his capacity as trustee would be a question of fact, as would also be the question whether the agreement was one the primary obligation for the performance of which rested upon the defendant or was one made with Carroll and upon his credit, so that the promise of the defendant was to answer for the debt of Carroll. *Bartolotto* v. *Calvo,* 112 Conn. 385, 152 Atl. 306. Upon the issues raised by either of these questions the trial court could not well refuse to receive the testimony as to the defendant's statement, but was correct in admitting it, leaving its effect to be dealt with in the charge.

There is no error.

In this opinion the other judges concurred.