**NEW HORIZON FINANCIAL SERVICES, L.L.C.,**
Plaintiff,

v.

**FIRST FINANCIAL EQUITIES, INC. and David Sadek, Defendants.**

**First Financial Equities, Inc.,**
Third–Party Plaintiff,

v.

**New Horizon Financial Services, L.L.C., Larry Rezak, Michael Klemenz and Terry Williams, Third–Party Defendants.**

No. 3:00CV1461 (JBA).

United States District Court, D. Connecticut.

Dec. 3, 2001.

Jeffrey R. Hellman, Lawrence S. Grossman, Zeisler & Zeisler, P.C., Bridgeport, CT, Harold F. Bernstein, Zone & Bernstein, Stamford, CT, for New Horizon Financial SVC, LLC, Larry Rezak, Michael Klemenz, Terry Williams.

Benjamin Aaron Pushner, Erik J. Winton, Fitzhugh & Associates, Boston, MA, Mark A. Newcity, Fitzhugh & Associates, Hartford, CT, Steven Sloan Anderson, Mark Morvay Rottenberg, Anderson & Rottenberg, New York City, for First Financial Equities, Inc., David Sadek.

### RULING ON MOTION TO DISMISS COUNTS FOUR, FIVE, SIX, AND SEVEN OF PLAINTIFF'S SECOND AMENDED COMPLAINT [Doc. # 45]

ARTERTON, District Judge.

New Horizon Financial Services, Inc. ("New Horizon") entered into a Memorandum of Understanding with First Financial Equities, Inc. ("FFE"), a mortgage lender and broker, to open an FFE office in Connecticut. As the relationship between New Horizon and FFE began to deteriorate, FFE allegedly refused to continue the relationship, refused to pay New Horizon money owed for its operating expenses, and used the threat of discontinued funding to force New Horizon to capitulate to FFE's demands. Notwithstanding New Horizon's agreement to a series of amendments to the original agreement, FFE eventually terminated the agreement and demanded that New Horizon cease acting on behalf of FFE.

New Horizon filed this diversity action alleging breach of contract, quantum meruit, unjust enrichment, tortious interference with contractual relations, fraud, larceny, and a violation of the Connecticut Unfair Trade Practices Act, Conn.Gen. Stat. § 42–110(b), *et seq.* ("CUTPA"). FFE and David Sadek (collectively "defendants") have moved to dismiss Counts Four (tortious interference), Five (fraud), Six (Larceny) and Seven (CUTPA) of New Horizon's Second Amended Complaint for failure to state a claim upon which relief can be granted.

## I. Background

For purposes of this motion to dismiss, the following facts as alleged in New Horizon's Second Amended Complaint are assumed to be true.

In February 1999, New Horizon was engaged in the business of mortgage origination and mortgage loan processing, through affiliation with a licensed mortgage lender. FFE is a licensed mortgage lender and broker. New Horizon and FFE entered into a Memorandum of Understanding in February 1999, which provided that New Horizon was to open an FFE office in Connecticut, which was to be independently owned and operated by New Horizon, and FFE agreed not to open a competing office in Connecticut. The agreement also provided that net profits from loans originated by New Horizon would be shared equally, and FFE was obligated to advance to New Horizon $22,600 per month to pay for office-related expenses, and an additional $13,750 for executive compensation. New Horizon was also entitled to reasonable compensa-

tion if it provided FFE with auxiliary services, income or expense savings.

Under the agreement, FFE was to provide branch mortgage licensing, accounts with credit agencies, accounts with vendors, application forms and bank warehouse lines necessary to complete the loan closings for the customers originated and/or serviced by New Horizon. The Memorandum of Understanding provided that it could not be terminated by either party except for cause. The agreement also required New Horizon to provide a financial instrument to Sadek, naming Sadek as the beneficiary of a cash value life insurance policy on the life of Linda Rezak, the wife of Lawrence Rezak, a member of New Horizon, which New Horizon provided.

In February 2000, FFE announced that it would no longer continue the relationship as set forth in the Memorandum of Understanding. In order to force New Horizon to agree to amend the agreement, FFE, acting at Sadek's direction, refused to honor its obligations under the agreement, and threatened to unilaterally terminate the agreement despite the fact that New Horizon was continuing to originate loan applications and other loan applications were continuing to close. FFE also refused to pay money owed under the agreement for New Horizon's monthly operating expenses, although FFE was New Horizon's sole source of income, and New Horizon was unable to function without the monthly payments. Faced with this untenable situation, New Horizon agreed to amend the Memorandum of Understanding, and on April 5, 2000, the agreement was amended and FFE, upon authorization from Sadek, released to New Horizon the funds previously withheld. Under the amendment, FFE was to remit to New Horizon an amount equal to the proceeds of all loan closings generated by New Ho-

rizon in the prior month, net of loan officer commissions, up to a maximum of $37,000 per month, in equal parts on the first and fifteenth day of the following month.

However, in July 2000, FFE and Sadek again informed New Horizon that they were unsatisfied with this arrangement, threatened to unilaterally terminate the contractual agreements between the parties, and withheld funds that they acknowledged were owed to New Horizon in an attempt to force New Horizon to capitulate to their demands. This lawsuit followed.

Defendants have moved to dismiss plaintiff's fraud, larceny, tortious interference and CUTPA claims, taking the position that plaintiff's assertion of these tort claims is an impermissible attempt to obtain punitive damages for what is properly characterized as a simple breach of contract action.

## II. Discussion

### A. *Standard*

When considering a motion to dismiss for failure to state a claim under Fed. R.Civ.P. 12(b)(6), the Court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor. *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 127 (2d Cir.2001). The case will not dismiss be dismissed unless the Court is "satisfied that the complaint cannot state any set of facts that would entitle [the plaintiff] to relief." *Id.*

### B. *Count Four: Tortious Interference*

The elements of a claim for tortious interference with business expectancies are as follows: "(1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3)

as a result of the interference, the plaintiff suffers actual loss." *Hi–Ho Tower, Inc. v. Com–Tronics,* 255 Conn. 20, 27, 761 A.2d 1268 (2000) (citations omitted). Defendants argue that this claim must be dismissed because New Horizon fails to allege a cognizable injury and, alternatively, because a party cannot interfere with its own business relations.

Defendants rely on *Meola v. Eagle Snacks Corp.,* 2000 WL 1342561, * 16 (Conn.Super. Sept.6, 2000), in support of their motion to dismiss for lack of cognizable injury. In *Meola,* the Connecticut superior court found that the plaintiff had failed to plead or prove [1] that he suffered an actual loss as a result of the alleged interference, which consisted of surreptitiously conspiring with a third party to prevent the plaintiff from purchasing a business, because the plaintiff had stated only that he had a reasonable expectation that he would have recovered a substantial profit had he purchased the business. *Id.* This was properly deemed "speculative." *Id.* Here, in contrast, New Horizon alleges that it "has been damaged by Defendants' tortious interference with New Horizon's business relationships insofar as Defendants impaired New Horizon's ability to secure referrals for new business from third party vendors." Compl., Fourth Count, ¶ 27. Thus, unlike the plaintiff in *Meola,* plaintiff has not alleged that there was a reasonable expectation that it would have made a profit but for the interference, but rather that its ability to secure referrals, upon which its revenue depended, was impaired. At this stage, plaintiff's allegation of injury is sufficient; whether plaintiff will be able to prove sufficiently specific damages to withstand a motion for summary judgment requires further factual development.

Next, defendants argue the unremarkable proposition that a party cannot tortiously interfere with its own business. According to defendants, because the Memorandum of Understanding contemplated that New Horizon would open an "FFE office" in Connecticut, New Horizon did business as FFE and therefore developed its business relationships with third parties solely in the name of FFE. This argument, however, ignores the fact that while New Horizon may have operated an "FFE office," it alleges that it was a separate legal entity. The cases cited by defendants, moreover, relate to tortious interference by an agent with the plaintiff's relationship with the agent's principal. *See, e.g., Jewett v. General Dynamics Corp.,* 1997 WL 255093, * 9 (Conn.Super. May 7, 1997); *Harper v. King,* 2001 WL 76989, * 8 (Conn.Super. Jan.10, 2001). Here, in contrast, the business relationships allegedly interfered with were not between FFE and New Horizon but rather between New Horizon and third parties. As the capacity in which New Horizon did business with third parties is disputed, the Court cannot say at this juncture that plaintiff fails to state a claim upon which relief can be granted and defendants' motion is denied as to Count Four.

### C. Count Five: Fraud

"The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." *Billington v. Billington,* 220 Conn. 212, 214, 595 A.2d 1377 (1991). "Generally, misrepresentations must relate to an existing or past fact. A promise to do something in the future is

---

1. *Meola* involved a grant of summary judg-

ment, rather than a motion to dismiss.

not actionable unless the promise is coupled with a present intention not to fulfill the promise." *Connecticut Bank & Trust Co. v. Benedetto,* No. CV 26 23 55, 1990 WL 283720, *2 (Conn.Super. Sept.17, 1990) (*citing Barlow Bros. Co. v. Gager,* 113 Conn. 429, 444–45, 155 A. 628 (1931); *Sallies v. Johnson,* 85 Conn. 77, 80, 81 A. 974 (1911)).

■ Plaintiff's Second Amended Complaint alleges two distinct fraudulent activities: the failure to disclose the unavailability of the warehouse bank lines before New Horizon made loan commitments in reliance on its belief that the funds were available, and the affirmative misrepresentation of the availability of such funding for four particular New Horizon borrowers, causing New Horizon to issue loan closing documents with scheduled closing dates, despite defendants' knowledge that those dates could not be met because adequate funding was unavailable.

According to defendants, New Horizon's allegation that FFE failed to provide funding by the closing date in the closing documents issued by FFE to borrowers constitutes a mere promise to do something in the future. Thus, defendants' argument goes, the absence of allegation that FFE did not intend to provide funding by the closing dates when it made the representations requires dismissal of this claim. However, the Second Amended Complaint alleges that FFE was aware that it had diminished or fully utilized bank warehouse lines, which meant that funding would not be available, when it issued the closing documents to the four borrowers. Thus, plaintiff has alleged that FFE had a current intent not to timely perform when it made the misrepresentations.

Next, defendants argue that the Second Amended Complaint fails to allege that defendants induced New Horizon to act, but merely states that because FFE failed to inform New Horizon that it did not intend to provide the funding as promised, New Horizon issued loan commitments to its borrowers and allowed them to accept FFE's closing documents and to schedule loans. This, defendants maintain, cannot satisfy the third prong without converting every breach of contract action where the breaching party realized it could not perform as promised but failed to so inform the other party into an action for fraud. In response, New Horizon argues that because FFE was aware that New Horizon had no independent means of verifying the extent of bank warehouse lines available to FFE, it acted in reliance on the misrepresentation by permitting its borrowers to schedule closings on the dates listed in the closing documents provided by FFE, which New Horizon claims it never would have done had defendants informed it that it did not have funds available to ensure timely closings. Thus, plaintiff does allege that defendants' misrepresentations and non-disclosures led to a change in its position to its detriment. *See DeLuca v. C.W. Blakeslee & Sons, Inc.,* 174 Conn. 535, 546, 391 A.2d 170 (1978).

Finally, defendants argue that the allegation of injury is inadequate because the New Horizon claims only that despite FFE's obligation to provide funding, FFE was late in doing so four times, and that New Horizon's business relationships with its borrowers, their legal counsel and realtors (potential sources of referrals) was damaged by the failure to fund the loans on the closing dates. Defendants take the position that absent a total failure to provide funding, there could be no damage to plaintiff. However, as plaintiff alleges that the delay in funding caused it injury in the form of damaged relationships with the four borrowers, their realtors and counsel, and lost referral sources as a result, the Court concludes that plaintiff has alleged

sufficient damages to withstand a motion to dismiss for failure to state a claim. As New Horizon notes, whether the evidence in fact supports this claim with adequate specificity is a matter of proof, not pleading, and must await summary judgment or trial.

### D. Count Six: Larceny

■ Connecticut General Statutes, § 52–564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." The word "steals" as used in this section is synonymous with larceny as defined by the larceny statute, Conn.Gen. Stat. § 53a–119. *See Hi–Ho Tower, Inc. v. Com–Tronics, Inc.*, 255 Conn. 20, 44, 761 A.2d 1268 (2000); *Suarez–Negrete v. Trotta*, 47 Conn.App. 517, 705 A.2d 215 (1998). Pursuant to § 53a–119, "[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from [the] owner."

Defendants argue that the larceny count must be dismissed because the conduct alleged by New Horizon, namely the withholding of funds owed under the contract in an attempt to pressure New Horizon to agree to amend the contract, does not constitute larceny as a matter of law. According to defendants, permitting a cause of action for larceny for non-payment of money allegedly due under a contract would convert every simple breach of contract action for non-payment into a claim for treble damages. Defendants maintain that money owed under the contract is fungible and therefore should not be considered New Horizon's "property" for purposes of this statute.

Plaintiff's complaint alleges that the money owed to it was past-due, and was withheld for the purpose of coercing it to agree to amend the contract. This, plaintiff asserts, sufficiently distinguishes the claims here from ordinary breach of contract actions. Plaintiff, however, cites no Connecticut cases to support its position that withholding money due under a contract, if for wrongful purposes, entitles it to recover treble damages under the larceny statute.

At least two lower Connecticut state court decisions have rejected claims for treble damages based on allegations that money owed under a contract has been wrongfully withheld, reasoning that a person owed money under a contract is not the "owner" of the withheld money, where the "money is, and at all times has been, the fungible property of the defendant, and not specifically designated money. . . . Furthermore, the plaintiff has never had a right to possession of the money outside of a right of action to enforce the contract." *Delta Capital Grp., LLC v. Smith*, No. CV 970571407S, 1998 WL 167293, *4 (Conn.Super. March 31, 1998); *accord Robinson v. Van Dyck Printing Co.*, 2000 WL 573168, * 3–4 (Conn.Super. April 25, 2000) (larceny claim based on allegations that defendant wrongfully retained money owed under a stock redemption agreement dismissed because plaintiff was owner of money only insofar as the contract was enforceable against the defendant); *see also Adams & Adams Building Servs., Inc. v. STS Grp., Inc.*, No. CV 980578865, *1 (Conn.Super. Nov. 12, 1998) ("Failure to pay for services rendered does not, in and of itself, amount to larceny or theft.").

In contrast, where a defendant was alleged to have wrongfully withheld the *plaintiff's* funds which had been entrusted to him by plaintiff for a specific purpose, and the evidence suggested that defendant intended to convert the funds to his personal use, a cause of action for larceny

may be maintained. *Suarez–Negrete,* 705 A.2d at 218–19. Thus, the critical distinction is whether, under the facts alleged here, plaintiff may properly be characterized as the "owner" of the money, such that defendants' withholding of the funds could amount to wrongfully withholding the property of the owner.

New Horizon also argues that under *Total Communications, Inc. v. DePaolo,* CV 990592846S, 2001 WL 204190, 2001 Conn.Super. LEXIS 401 (Feb. 9, 2001), a claim for money wrongfully withheld under a contract is viable as a larceny claim. That superior court case involved an allegation that the defendant, a former employee of the plaintiff, had wrongfully refused to reimburse the plaintiff for training costs after he resigned within a year, in violation of their employment agreement. *Id.* The decision is not particularly illuminating, as there is no discussion of why withholding funds owed under a contract constitutes larceny; the decision simply assumes that the money was the plaintiff's property. *Id.* However, as the money owed by the employee in that case was the *plaintiff's* money which was to be reimbursed under the contract, and in the absence of any reasoning suggesting why the larceny statute should be more broadly construed, this Court finds that the instant case is distinguishable from *Total Communications,* and is more akin to *Delta Capital Group* and *Robinson.* Because the money withheld here is not alleged to have been plaintiff's property, but rather is fungible, the Court concludes that plaintiff's Second Amended Complaint fails to state a claim for larceny, and defendants' motion to dismiss is granted as to Count Six.

### E. *Count Seven: CUTPA*

Defendants urge the Court to dismiss the CUTPA count as duplicative of the breach of contract allegations, and claim that there is nothing "immoral, unethical, oppressive, or unscrupulous" about the actions alleged in the Second Amended Complaint. According to defendant, because plaintiff's claim is essentially a breach of contract claim, it fails to allege a violation of CUTPA as a matter of law.

Plaintiff responds that its CUTPA allegations incorporate all the other allegations of the Second Amended Complaint, which include allegations of fraudulent and tortious conduct. Inasmuch as the Court disagrees with defendants' position that the Second Amended Complaint fails to state a claim for fraud or tortious interference with contractual relations, the Court concludes that the CUTPA claim may stand. *Cf. Boulevard Assocs. v. Sovereign Hotels, Inc.,* 72 F.3d 1029, 1038 (2d Cir. 1995) ("[a] simple breach of contract cannot constitute a [CUTPA] violation").

### IV. Conclusion

For the reasons discussed above, defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED as to Count Six (larceny) and DENIED in all other respects.

IT IS SO ORDERED.