UNITED STATES TRUST COMPANY *v.*
JAMES T. BOHART, SR., ET AL.
(12234)

PETERS, C. J., HEALEY, SHEA, DANNEHY and STOUGHTON, Js.

Argued May 7—decision released July 30, 1985

*Leo Nevas,* with whom, on the brief, were *Laurence Sarezky, Jamie K. Gerard, Lisa M. Lopez* and *Tom James,* for the appellants (defendants).

*Gary A. MacMillan,* with whom were *John F. Spindler* and, on the brief, *Cynthia C. George,* for the appellee (plaintiff).

PETERS, C. J. The principal issue raised by this appeal is whether personal jurisdiction was properly exercised over Texas beneficiaries of a trust created by Connect-

icut residents. The plaintiff United States Trust Company brought suit for approval of its account as trustee for a terminated inter vivos trust. The defendants, minor beneficiaries of that trust and their guardian,[1] filed a counterclaim in which they sought immediate disbursement of the trust assets and damages for the plaintiff's alleged breach of its fiduciary duties in managing the trust. The trial court held for the plaintiff on both the complaint and the counterclaim, and the defendants appealed. We find no error.

The facts underlying this appeal are not disputed. In 1943, Richard P. and Elsie Ettinger established a trust for the benefit of Jean Prentice Bohart, their granddaughter. Mr. Ettinger was the founder, president and major shareholder of Prentice-Hall, Inc., a publishing corporation, and Prentice-Hall stock was the principal asset of the trust. Mr. Ettinger served as trustee until 1965, when he resigned and appointed the plaintiff, a New York corporation, as successor trustee.[2] Under the terms of the trust, Jean Bohart was an income beneficiary until she reached the age of thirty-five. On that date she would have become entitled to one half of the trust principal, and would have retained her income interest in the remaining assets. Upon her death, the trust assets were to be distributed to her issue. Because Jean Bohart died on June 17, 1974, before she had attained the age of thirty-five, the entire trust principal became payable to the minor defendants, her children. On August 20, 1974, the named defendant, Jean's husband, was appointed guardian of their children's estates.

[1] On October 15, 1976, the defendant Ernest L. Josem was appointed guardian ad litem of the minor defendants. On November 16, 1978, the American National Bank of Austin, Texas, succeeded the named defendant as guardian of the children's estates and as a defendant in this case. For ease of reference, the named defendant, Josem, and the American National Bank are referred to collectively as the children's guardian.

[2] Mr. Ettinger resigned on December 30, 1965, and the plaintiff assumed its duties as trustee on January 20, 1966.

The plaintiff's complaint was filed on April 21, 1975. The case, however, did not come to trial until November, 1982. Meanwhile, on November 14, 1975, the defendants filed a suit in federal district court in Texas, making the same claims raised in their counterclaim. The Texas court dismissed this suit on December 8, 1976, on the ground that the Connecticut court had properly taken jurisdiction of the dispute between the parties. The defendants' appeal of the dismissal to the United States Court of Appeals for the Fifth Circuit was itself dismissed on March 29, 1977, for failure to file a brief.

On July 19, 1978, three-quarters of the principal and accumulated income of the trust was ordered distributed pursuant to the parties' joint stipulation. On May 27, 1983, the trial court accepted the plaintiff's final account for the period ending June 17, 1974, and, with certain disallowances of expenses, accepted the plaintiff's supplemental account for the period ending August 31, 1982. Accordingly, the trial court rendered judgment for the plaintiff on the defendants' counterclaim.[3]

The defendants' claims of error fall into three categories. First, the defendants argue that the trial court lacked personal jurisdiction over them.[4] Second, the defendants contend that the trial court erred in striking their counterclaim from the jury docket. Third, the defendants challenge numerous findings and rulings of

[3] The trial court also ordered the plaintiff to file a supplemental account for the period September 1, 1982, through the date of judgment and to distribute any assets remaining thereafter pursuant to the terms of the July 19, 1978 stipulation.

[4] The defendants raised the jurisdictional issue in a motion to erase and a plea in abatement, which were filed on May 21, 1975, and heard on August 1, 1975. On August 4, 1975, the trial court granted the motions as to the named defendant in his individual capacity and otherwise denied the requested relief.

the trial court relating to the merits of their allegations of breach of fiduciary duty. We are persuaded by none of these claims.

## I

The defendants base their jurisdictional claim on the due process requirement that a defendant "not present within the territory of the forum . . . have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co.* v. *Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945); see *Standard Tallow Corporation* v. *Jowdy,* 190 Conn. 48, 51–52, 459 A.2d 503 (1983). The defendants argue that because they are domiciliaries and residents of Texas[5] and because the trust property has at all relevant times been held and administered in New York by a New York corporation, the trial court lacked personal jurisdiction over them. The plaintiff contends that such jurisdiction obtains because the trust agreement was executed by Connecticut residents, and because the jurisdiction of the trial court was invoked in reliance on the nineteenth paragraph of the agreement, which provides: "This Agreement shall be construed and regulated by the laws of the State of Connecticut and the Trustee shall not be required to account in any Court other than one of the Courts of that State."

As we recently explained in *Lombard Bros., Inc.* v. *General Asset Management Co.,* 190 Conn. 245, 250, 460 A.2d 481 (1983), analysis of a due process challenge to personal jurisdiction is a two-step process. First, we must inquire into the foundation, under state law, of the trial court's assertion of jurisdiction over the

---

[5] The American National Bank is a Texas corporation that does no business in Connecticut. It is not claimed that any of the other defendants do business or have other contacts with Connecticut except as beneficiaries of the trust involved in this litigation.

defendants. Only if personal jurisdiction has attached under state law do we reach the constitutional question of whether due process is offended thereby. The plaintiff ordinarily bears the burden of establishing an adequate factual basis for personal jurisdiction over a defendant. *Standard Tallow Corporation* v. *Jowdy*, supra, 53–54. Unlike subject matter jurisdiction, however, personal jurisdiction may be created through consent or waiver. See *Insurance Corporation of Ireland* v. *Compagnie des Bauxites*, 456 U.S. 694, 703–704, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982); *Lake Garda Co.* v. *Lake Garda Improvement Assn.*, 156 Conn. 61, 65, 238 A.2d 393 (1968); *Reed* v. *Reincke*, 155 Conn. 591, 598–99, 236 A.2d 909 (1967).

## A

Our inquiry into the state law basis for jurisdiction over the defendants is guided by the unusual nature of this action. The plaintiff did not seek to establish an affirmative claim against the defendants. Instead, it requested judicial approval of its account as trustee as a preliminary step in the distribution of the trust assets to the defendants. The trial court's exercise of jurisdiction was thus limited to deciding the propriety of the plaintiff's proposed accounting and the defendants' challenge thereto.

The record before us reveals an adequate basis for such a limited assertion of jurisdiction. The Superior Court is vested with the equitable power to approve an inter vivos trust accounting. *Preston* v. *Preston*, 102 Conn. 96, 121, 128 A. 292 (1925); *Second National Bank of New Haven* v. *Harris Trust & Savings Bank*, 29 Conn. Sup. 275, 288, 283 A.2 226 (1971). The settlors were residents of Connecticut at the time the trust was created.[6] The trust agreement specifically provided that

[6] The trial court specifically found that the Ettingers were residents of Connecticut, and the defendants conceded the finding in their brief. We therefore do not consider the defendants' attempt, at oral argument, to

the trust was to be administered pursuant to Connecticut law and that an accounting action would be litigated in Connecticut. The defendants, through their interest in the trust, thus had a significant relation to Connecticut for the purposes of this lawsuit. Cf. 1 Restatement (Second), Conflict of Laws (1971) § 39; 1 Restatement (Second), Judgments (1982) § 5.

In addition, while the defendants have consistently questioned the constitutionality of Connecticut jurisdiction, they have never directly challenged the trial court's state law authority to render judgment. In their brief, the defendants claimed that they had not been properly served with process, but their claim assumed that there was a valid statutory basis for the assertion of jurisdiction.[7] The defendants' actions regarding the suit they initiated in Texas further support the conclusion that they waived the issue of the state law basis for jurisdiction. In that suit, the defendants made the same allegations contained in their counterclaim. The Texas court dismissed the action because it found that

challenge this fact. The preamble to the trust agreement states: "This Agreement [is] made in the City of East Norwalk, County of Fairfield, State of Connecticut . . . ." The signature page, however, gives no indication of where the document was actually executed.

[7] The defendants challenged the service of process because it had not been made on the secretary of the state as provided for in General Statutes § 52-59b (c). The defendants thus assumed that the trial court was exercising jurisdiction pursuant to General Statutes § 52-59b (a). Section 52-59b, however, does not apply to this suit as it governs only actions against "any nonresident individual . . . who . . . (1) Transacts any business within the state; or (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) owns, uses or possesses any real property situated within the state." General Statutes § 52-59b (a).

the Connecticut Superior Court had properly taken jurisdiction over the parties and their dispute. Although the plaintiff did not raise the defense of collateral estoppel below; see Practice Book § 164;[8] the defendants' failure to pursue their appeal from the judgment of the Texas court militates against any effort to relitigate the question here. See *Baldwin* v. *Iowa State Travelling Men's Assn.*, 283 U.S. 522, 51 S. Ct. 517, 75 L. Ed. 1244 (1931); cf. *Morabito* v. *Wachsman*, 191 Conn. 92, 96–97, 463 A.2d 593 (1983); *Hendrix* v. *Hendrix*, 160 Conn. 98, 104–105, 273 A.2d 890 (1970). The trial court did not err in asserting jurisdiction over the defendants.

## B

We now turn to the question of whether this exercise of jurisdiction met with the constitutional requirements of the due process clause. The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness. "[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corporation* v. *Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). This basic tenet of foreseeability has given rise to the specific

---

[8] "[Practice Book]

"Sec. 164. —DENIALS; SPECIAL DEFENSES

"No facts may be proved under either a general or special denial except such as show that the plantiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that he has no cause of action, must be specially alleged. Thus, accord and satisfaction, arbitration and award, coverture, duress, fraud, illegality not apparent on the face of the pleadings, infancy, that the defendant was non compos mentis, payment (even though nonpayment is alleged by the plaintiff), release, the statute of limitations and res judicata must be specially pleaded, while advantage may be taken, under a simple denial, of such matters as the statute of frauds, or title in a third person to what the plaintiff sues upon or alleges to be his own."

corollary that "parties to a contract may agree in advance to submit to the jurisdiction of a given court . . . ." *National Rental* v. *Szukhent,* 375 U.S. 311, 315–16, 84 S. Ct. 411, 11 L. Ed. 2d 354 (1964). Absent a showing of fraud or overreaching, such forum clauses will be enforced by the courts. *The Bremen* v. *Zapata Off-Shore Co.,* 407 U.S. 1, 10–12, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972). At the same time, jurisdiction may not be asserted "in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." *Burger King Corporation* v. *Rudzewicz,* 471 U.S. 462, 478, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). The specific facts of each case necessarily determine the outcome of a minimum contacts analysis. See *Kulko* v. *California Superior Court,* 436 U.S. 84, 92, 98 S. Ct. 1690, 56 L. Ed. 2d 132, reh. denied, 438 U.S. 908, 98 S. Ct. 3127, 57 L. Ed. 2d 1150 (1978).[9]

These principles compel the conclusion that the trial court properly exercised jurisdiction over this suit. The defendants should reasonably have foreseen being haled into the Superior Court to defend this case. They held their interest in the trust under the terms of a trust agreement that had been executed by Connecticut residents.[10] The agreement contained a Connecticut choice of laws provision, a factor which the United States Supreme Court has recently held to be relevant when weighing a defendant's contacts with a forum. See

[9] The plaintiff argues that because the trial court had quasi in rem jurisdiction over the trust assets, the minimum contacts test is inapplicable. The distinction between quasi in rem and in personam jurisdiction, however, is no longer relevant to due process minimum contacts analysis. "[A]ll assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe [Co.* v. *Washington,* 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)] and its progeny." *Shaffer* v. *Heitner,* 433 U.S. 186, 212, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977); see *Hodge* v. *Hodge,* 178 Conn. 308, 317–19, 422 A.2d 280 (1979).

[10] See footnote 6, supra.

*Burger King Corporation* v. *Rudzewicz,* supra, 2187. The defendants do not contend that the trust agreement was the product of fraud. Indeed, given the necessary uncertainty of the location of the remaindermen at the termination of the trust, it was reasonable for the settlors to designate a forum and for the plaintiff to honor that choice. The forum selection portion of paragraph nineteen thus gave the defendants specific notice that any accounting action would be litigated in Connecticut.[11] Nor have the defendants shown that defending this case in Connecticut was gravely and unfairly inconvenient. The defendants were represented by able local counsel and their claims were fully litigated. In sum, in light of all of the circumstances, we conclude that traditional notions of fair play and substantial justice were not violated by the adjudication of this suit in Connecticut.

## II

Although the plaintiff addressed its complaint to the court, the defendants claimed their counterclaim for the jury docket. The amended substituted counterclaim is in six counts. The first count charges the plaintiff with having wrongfully refused to distribute the trust assets. The sixth count adds the allegation that this refusal was aimed at forcing the defendants to abandon their claims against the plaintiff. The second count challenges certain expenses claimed by the plaintiff on the ground that they were incurred only because of the failure to effect distribution. The third, fourth and fifth counts allege that the plaintiff mismanaged the trust in breach of its fiduciary duties. The defendants asked for delivery of all trust principal and income, damages, interest, costs and attorney's fees. The trial court

---

[11] These connections between the trust and Connecticut distinguish the instant case from the situation presented in *Hanson* v. *Denckla,* 357 U.S. 235, 252–54, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958), where there were no substantial contacts between the forum state and the trust at issue.

granted the plaintiff's motion to strike the claim for a jury and the defendants duly excepted. The defendants maintain that the trial court's action violated their rights to a jury trial under article first, § 19, of our Connecticut constitution, as amended,[12] and General Statutes § 52-215.[13]

The defendants' contention is defeated by the essentially equitable nature of the counterclaim. There is no

[12] Article first, § 19, of the Connecticut constitution, as amended, provides: "The right of trial by jury shall remain inviolate, the number of such jurors, which shall not be less than six, to be established by law; but no person shall, for a capital offense, be tried by a jury of less than twelve jurors without his consent. In all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. The right to question each juror individually by counsel shall be inviolate."

[13] "[General Statutes] Sec. 52-215. DOCKETS. JURY CASES. COURT CASES. In the superior court a docket shall be kept of all cases. In such docket immediately following the names of the parties and their attorneys in all jury cases shall be entered the word 'jury.' The following-named classes of cases shall be entered in the docket as jury cases upon the written request of either party made to the clerk within thirty days after the return day: Appeals from probate involving the validity of a will or paper purporting to be such, appeals from the actions of commissioners on insolvent estates, and, except as hereinafter provided, civil actions involving such an issue of fact as, prior to January 1, 1880, would not present a question properly cognizable in equity, except that there shall be no right to trial by jury in civil actions in which the amount, legal interest or property in demand does not exceed two hundred fifty dollars or in a summary process case. When, in any of the above-named cases an issue of fact is joined, the case may, within ten days after such issue of fact is joined, be entered in the docket as a jury case upon the request of either party made to the clerk; and any such case may at any time be entered in the docket as a jury case by the clerk, upon written consent of all parties or by order of court. All issues of fact in any such case shall be tried by the jury, provided the issues agreed by the parties to be tried by the court may be so tried. All cases not entered in the docket as jury cases under the foregoing provisions, including actions in which an account is demanded and judgment rendered that the defendant shall account, writs of habeas corpus and ne exeat, complaints for dissolution of marriage and all other special statutory proceedings which, prior to January 1, 1880, were not triable by jury, shall be entered on the docket as court cases, and shall, with all issues of law and issues of fact, other than those hereinbefore specified, which may be joined in actions entered on the docket as jury cases, be disposed of as court cases."

right to a jury trial in an equitable action. *Franchi* v. *Farmholme, Inc.,* 191 Conn. 201, 209–10, 464 A.2d 35 (1983); *Meriden Savings Bank* v. *McCormack,* 79 Conn. 260, 262, 64 A. 338 (1906). The defendants, however, claim to have raised in their counterclaim issues of law that require determination by a jury. When legal and equitable issues are combined in a single action, whether the right to a jury trial attaches depends upon the relative importance of the two types of claims. "Where incidental issues of fact are presented in an action essentially equitable, the court may determine them without a jury in the exercise of its equitable powers. *Doris* v. *McFarland,* 113 Conn. 594, 608, 156 Atl. 52 [1931]. Where, however, the essential basis of the action is such that the issues presented would be properly cognizable in an action of law, either party has a right to have the legal issues tried to the jury, even though equitable relief is asked in order to give full effect to the legal rights claimed; *Berry* v. *Hartford National Bank & Trust Co.,* 125 Conn. 615, 618, 7 Atl. (2d) 847 [1939]; *LaFrance* v. *LaFrance,* 127 Conn. 149, 152, 14 Atl. (2d) 739 [1940] . . . ." *National Bank of Commerce* v. *Howland,* 128 Conn. 307, 310, 22 A.2d 773 (1941). Because a counterclaim is an independent action; see *Home Oil Co.* v. *Todd,* 195 Conn. 333, 341, 487 A.2d 1095 (1985); the question presented is whether the defendants' counterclaim is essentially legal or essentially equitable. See *Franchi* v. *Farmholme, Inc.,* supra, 211; *Flanigan* v. *Foley,* 20 Conn. Sup. 12, 13, 119 A.2d 741 (1955). This analysis must be performed in the context of the pleadings when read as a whole. *Franchi* v. *Farmholme, Inc.,* supra. The form of the relief demanded is not dispositive. *Fitzgerald* v. *Sullivan,* 12 Conn. Sup. 206, 206–207 (1943).

Applying these principles to the counterclaim, we conclude that it is in essence a challenge to a proposed

trust account and is therefore equitable. See *Parsons v. Lyman,* 18 F. Cas. 1263, 1266, 32 Conn. 566, 575 (C.C.D. Conn. 1863) (No. 10780); *Phillips v. Moeller,* 147 Conn. 482, 488, 163 A.2d 95 (1960); *Second National Bank of New Haven v. Harris Trust & Savings Bank,* supra; Bogert, Law of Trusts (5th Ed. 1973) § 142. Count two relates directly to specific items claimed in the plaintiff's account. Counts one and six, because they seek enforcement of the terms of the trust agreement concerning distribution, are likewise based in equity. See *Berry v. Hartford National Bank & Trust Co.,* supra, 618; 3 Scott, Trusts (3d Ed. 1967) § 199.1. The remaining counts presumably provide the most plausible basis for the jury claim because they are couched in tort language, alleging negligence, gross negligence and intentional wrongdoing in the plaintiff's mangement of the trust. Yet the effect of even these counts is to challenge the proposed account for having understated the amount that should have been available to the beneficiaries upon distribution. The defendants do not demand immediate payment of a sum certain that is unconditionally due them, a demand that is cognizable at law. See 3 Scott, Trusts (3d Ed. 1967) §§ 198, 198.1; 1 Restatement (Second), Trusts (1959) §§ 197, 198. Rather, alleging misconduct during the course of the plaintiff's stewardship, they seek restoration of funds to the trust corpus. Such a request is addressed to equity. Cf. *Kaitz v. District Court, Second Judicial District,* 650 P.2d 553, 554–55 (Colo. 1982); *Allard v. Pacific National Bank,* 99 Wash. 2d 394, 400–401, 663 P.2d 104 (1983). In short, although the counterclaim contains a claim of damages for negligence, its overall tenor is equitable.[14] The counterclaim

---

[14] Because the defendants' allegations of breach of fiduciary duty are made in the context of a challenge to a proposed account, this case is closer to the facts of *Berry v. Hartford National Bank & Trust Co.,* 125 Conn. 615, 7 A.2d 847 (1939), than to those presented in *Dettenborn v. Hartford-National Bank & Trust Co.,* 121 Conn. 388, 185 A. 82 (1936), or in *Barlow Brothers Co. v. Gager,* 113 Conn. 429, 155 A. 628 (1931).

was properly stricken from the jury docket.[15]

### III

The defendants raise three claims concerning the merits of their counterclaim. Their main contention is that the trial court erred in not holding the plaintiff liable for its failure to diversify the trust assets. The defendants also fault the trial court's determination that the plaintiff did not unduly delay distribution of the trust assets. Finally, the defendants challenge several rulings of the trial court relating to the discovery and admission of evidence.

### A

The defendants' diversification claim stems from the volatile nature of the trust holdings. From the inception of the trust until its termination, Prentice-Hall stock was by far its single largest asset.[16] During the plaintiff's tenure as trustee, the value of this stock, and the corresponding value of the trust, underwent significant change. In January, 1966, when the plaintiff became trustee, a share of Prentice-Hall stock was worth $18.50. By January, 1970, the price of the stock had climbed to $52. Over the next few years the price fluctuated widely, dropping sharply in 1972 and 1973. Upon distribution of the trust in 1979, the stock was worth approximately $24 a share. During the period from 1966 to 1979, the value of the trust increased by $302,608.

---

[15] The defendants also argue that even if they were not entitled to a jury trial as a matter of right, the trial court had the discretion to "order any issue or issues of facts in any action demanding equitable relief to be tried by a jury of six." General Statutes § 52-218. The defendants, however, have not carried their burden of proving abuse of that discretion.

[16] The trust portfolio also contained stock from three publishing companies that had been spun off from Prentice-Hall. As the trial court noted, the defendants pursued no claim relating to the plaintiff's retention of these stocks.

The gravamen of the defendants' claim is that the plaintiff was negligent in failing to diversify the trust assets by selling Prentice-Hall stock before its 1972-1973 decline.[17] The trial court refused "to charge [the plaintiff] for possible fluctuations of the market that from hindsight might have resulted in the sale of stock at its highest peak" and held that the plaintiff had not acted improperly in retaining the stock.

The law governing the duties of a trustee respecting investment of trust assets is well settled. Generally, a trustee must act with the care of a prudent investor. *Jackson* v. *Conland,* 178 Conn. 52, 55, 420 A.2d 898 (1979); 1 Restatement (Second), Trusts (1959) § 174. A trust agreement may, however, "specifically permit trustees to invest in speculative or otherwise hazardous investments." *Jackson* v. *Conland,* supra; see 1 Restatement (Second), Trusts (1959) § 174, comment d. When a trustee has been vested with such discretion, liability attaches only if the discretion is abused. *McCarthy* v. *Tierney,* 116 Conn. 588, 591–92, 165 A. 807 (1933); see *Conway* v. *Emeny,* 139 Conn. 612, 619, 96 A.2d 221 (1953).

The record in this case reveals that the plaintiff was accorded the discretion to act as it did. The second paragraph of the trust agreement provides in relevant part: "The Trustee is specifically authorized to continue to hold the property as received from the Settlors . . . ." As the trial court found, one of the settlors' motivations for creating a trust composed almost exclusively of Prentice-Hall stock was to preserve family control of the company. Moreover, Mr. Ettinger saw no need to diversify the trust portfolio during the twenty-two

---

[17] In their counterclaim, the defendants charged that the plaintiff's failure to diversify stemmed from gross negligence and intentional wrongdoing as well as simple negligence. The trial court found that the defendants had not substantiated these allegations and the defendants have not pursued the issue on appeal.

years he served as trustee. While, in retrospect, the value of the trust could have been maximized had the plaintiff divined the downward course of the stock market in the 1970's, we cannot say that it abused the discretion specifically granted it in continuing to hold Prentice-Hall stock. "A trustee is neither the insurer nor the guarantor of the value of a trust's assets. A trustee's performance is not judged by success or failure, and while negligence may result in liability, a mere error in judgment will not." *Hartford National Bank & Trust Co.* v. *Donahue,* 35 Conn. Sup. 194, 198, 402 A.2d 1195 (1979).

B

The defendants fault the plaintiff for delaying the distribution of the trust. The defendants note that the plaintiff did not file its account until sixteen months after the death of Jean Bohart and that partial distribution was not effected until March, 1979. The defendants claim that the plaintiff had no legitimate reason for seeking judicial approval of its account and that it should be held liable for the resulting delay in disbursement.

The defendants' claim is refuted by the factual findings of the trial court. The court found that the actions of the plaintiff were properly motivated and that the defendants, by initiating litigation in Texas, were themselves chiefly responsible for the delay in distribution.[18] The plaintiff was entitled to ask for court approval of its account. See 1 Restatement (Second), Trusts (1959) § 260; 4 Scott, Trusts (3d Ed. 1967) § 451.1. Given the complex pattern of litigation that resulted from this request, we cannot say that the trial court erred in refusing to hold the plaintiff liable for the delay in distribution.

---

[18] In addition to the suit filed in October, 1976, in federal district court, the named defendant had also initiated proceedings against the plaintiff in Dallas Probate Court in August, 1976.

## C

The defendants' remaining contention requires little discussion. The defendants argue that the trial court erred in quashing their eve-of-trial subpoena duces tecum and in admitting evidence related to the named defendant's financial circumstances. Such matters are entrusted to the discretion of the trial court. See, e.g., *Turgeon* v. *Turgeon,* 190 Conn. 269, 273, 460 A.2d 1260 (1983) (evidence); *Standard Tallow Corporation* v. *Jowdy,* supra, 57 (discovery); *State* v. *Moye,* 177 Conn. 487, 501, 418 A.2d 870, vacated on other grounds, 444 U.S. 893, 100 S. Ct. 199, 62 L. Ed. 2d 129, on remand, 179 Conn. 761, 409 A.2d 149 (1979) (evidence). The defendants have shown neither abuse of that discretion nor prejudice resulting from the alleged errors. They therefore cannot prevail on this claim.

There is no error.

In this opinion the other judges concurred.