[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION MOTION FOR SUMMARY JUDGMENT
This case arises out of a contract dispute arbitrated in California. The plaintiffs, Robert Eatman and Robert Eatman Enterprises, Inc., entered into a contract with the defendant, Joseph Schlosser, on June 21, 1994. The purpose of the contract was to procure representation of the defendant the entertainment industry by the plaintiffs. The contract provided that in the event of any dispute, the matter would be submitted to arbitration in Los Angeles, California.
The plaintiffs allege that the defendant obtained employment in Connecticut but failed to pay the plaintiffs' commission under the contract. The plaintiffs submitted the matter to arbitrators in California, who rendered a decision in the plaintiffs' favor. On July 24, 1995, the plaintiffs brought an action in the Superior Court of the State of California to confirm their arbitration award and gave notice thereof to the defendant. The defendant failed to appear before the California court and the court entered judgment for the plaintiffs in the amount of $18,600 plus costs of $946. CT Page 4010-N
The plaintiffs filed the present action on November 25, 1995 to enforce the California judgment in Connecticut. On March 15, 1996, the plaintiffs filed a motion for summary judgment and an accompanying memorandum of law. On April 29, 1996, the defendant filed his memorandum in opposition to the plaintiffs' motion challenging the California court's judgment on the ground that it lacked personal jurisdiction over him.
Specifically, the defendant argues that the California judgment violates the due process clause of thefourteenth amendment of the United States Constitution. The plaintiffs assert that by the terms of the contract — the choice of law clause — the defendant consented to jurisdiction in California if any dispute arose. Therefore, the plaintiffs seek enforcement of the California judgment pursuant to the full faith and credit clause of the United States Constitution.
 I
"Summary judgment `shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Practice Book § 384. `In deciding a motion for summary judgment, the trial court must view the evidence in the light I most favorable to the non-moving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment.]'" Home Ins.Co. v. Aetna Life Casualty Co., 235 Conn. 185, 202,663 A.2d 1001 (1995); quoting Water Way Properties v. Colt's Mfg. Co.,230 Conn. 660, 664-65, 646 A.2d 143 (1994).
 II
"As a matter of federal law, the full faith and credit clause requires a state court to accord to the judgment of another state CT Page 4010-O the same credit, validity and effect as the state that rendered the judgment would give it. . . . This rule includes the proposition that lack of jurisdiction renders a foreign judgment void. . . . A party can therefore defend against the enforcement of a foreign judgment on the ground that the court that rendered the judgment lacked personal jurisdiction, unless the jurisdictional issue was fully litigated before the rendering court or the defending party waived the right to litigate the issue." (Citations omitted.) Packer Plastics, Inc. v. Laundon,214 Conn. 52, 56, 570 A.2d 687 (1990).
"The United States Supreme Court has consistently held, however, that the judgment of another state must be presumed valid, and the burden of proving a lack of jurisdiction `rests heavily upon the assailant.' . . . Furthermore, the party attacking the judgment bears the burden of proof regardless of whether the judgment at issue was rendered after full trial on the merits or after an ex parte proceeding." (Citations omitted.)Packer Plastics, Inc. v. Laundon, supra, 214 Conn. 57. "The full faith and credit clause does not automatically transform a foreign judgment into a valid judgment in this state; in order for a foreign judgment to constitute a valid judgment, it must be made a judgment in this state." Cahn v. Cahn, 26 Conn. App. 720,730, 603 A.2d 759 (1992). "It can be made a judgment there only if the court purporting to render the original judgment had power to render such a judgment. A judgment in one state is conclusive upon the merits in every other state, but only if the court of the first state had power to pass on the merits — had jurisdiction, that is, to render judgment." Krueger v. Krueger,179 Conn. 488, 491, 427 A.2d 400 (1980). "A court is without power to render a judgment if it lacks jurisdiction of the parties or of the subject matter, one or both. In such cases the judgment is void, has no authority and may be impeached."Marshall v. Clark, 170 Conn. 199, 205, 365 A.2d 1202 (1976).
 III
The defendant attacks the jurisdiction of the California court on the ground that the defendant had no minimum contacts with California and that the contract was entered into by mistake. "[A]nalysis of a due process challenge to personal jurisdiction is a two-step process. First . . . [the court] must inquire into the foundation, under state law, of the trial court's assertion of jurisdiction over the defendants. Only if personal jurisdiction has attached under state law . . . [does CT Page 4010-P the court] reach the constitutional question of whether due process is offended thereby." United States Trust Co. v. Bohart,197 Conn. 34, 38-39, 495 A.2d 1034 (1985). "[P]ersonal jurisdiction may be created through consent or waiver." Id.
In the present case, the defendant consented to California jurisdiction when the defendant signed the contract with the plaintiffs. There is no controversy that there was this consent. The dispute between the parties exists as to whether the defendant entered into the contract by mistake or fraud so as to violate due process. This debate is addressed by the second part of jurisdictional analysis.
"The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness. `The foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.' World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286,297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). This basic tenet of foreseeability has given rise to the specific corollary that `parties to a contract may agree in advance to submit to the jurisdiction of a given court. . . .' National Rental v.Szukhent, 375 U.S. 311, 315-16, 84 S.Ct. 411 11 L.Ed.2d 354
(1964). Absent a showing of fraud or overreaching, such forum clauses will be enforced by the courts. The Bremen v. ZapataOff-Shore Co., 407 U.S. 1, 10-12, 92 S.Ct. 1907, 32 L.Ed.2d 513
(1972). At the same time, jurisdiction may not be asserted `in such a way as to make litigation "so gravely difficult and inconvenient" that a party unfairly is at a "severe disadvantage" in comparison to his opponent.' Burger King Corp. v. Rudzewicz,471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)." UnitedStates Trust Co. v. Bohart, supra, 197 Conn. 42-43.
The contract provided for arbitration of disputes in Los Angeles, California. There are no allegations, nor is there any evidence to support a showing of fraud in the making of the contract. Rather, the affidavits submitted by the defendant in opposition to the plaintiffs' motion state merely that the defendant did not know he was consenting to be sued in a foreign court, and that if he had known, he would never have signed the contract. (Defendant's Affidavit, ¶¶ 9-10, April 3, 1996). The court finds that this assertion creates no genuine issue of material fact as to the validity of the defendant's consent to submit disputes arising under the contract to arbitrators in the CT Page 4010-Q State of California.
The defendant is a person with experience in the radio industry. (Defendant's Affidavit, ¶ 2). At the time he signed the contract, he was employed at a Hartford radio station. (Defendant's Affidavit, ¶ 5, April 3, 1996). By his own affidavit, he admits that he negotiated for employment with a radio station in Georgia before signing the contract for representation by the plaintiffs. (Defendant's Affidavit, ¶ 6, April 3, 1996). The defendant further admits that he secured employment without the benefit of any representation. (Defendant's Affidavit. ¶ 12, April 3, 1996). Therefore, the defendant cannot convincingly claim that he is ignorant of the customs of the radio industry.
Additionally, the defendant entered into the contract for representation because of employment opportunities with a Georgia radio station. The defendant intended for the contract to benefit him either in Georgia or in Connecticut. (Defendant's Affidavit, ¶ 8, April 3, 1996). Therefore, the defendant must have known that he would be subject to suit outside of Connecticut, given that he was seeking employment in other areas of the country.
There is no evidence that California is any more inconvenient for the defendant to defend himself in than Georgia. Additionally, the plaintiffs do not derive a disproportionate advantage over the defendant by arbitrating contact disputes in California.
A further concern under due process analysis however, is whether the choice of the forum in the contact is overreaching.
Under the contract, any dispute was to be arbitrated in Los Angeles, California. The defendant stated that the contract was intended to lead to employment in either Georgia or Connecticut. While a good distance away from both Connecticut and Georgia, the choice of Los Angeles was not without its logic. Los Angeles, California is the capital of our Nation's entertainment industry. The contract was a contract for representation in the entertainment industry with an agent headquartered in Los Angeles. The defendant could possibly benefit greatly from an agent who had familiarity with and access to the industry's acknowledged capital.
Furthermore, the defendant met plaintiff Robert Eatman at a national radio industry convention in Florida. While the defendant's choice of markets may have been limited, the services the CT Page 4010-R plaintiffs were to provide him could have been rendered in any market across the country. Los Angeles becomes a very logical forum for the resolution of the parties' dispute when the national scope of the industry and the location of the plaintiffs' headquarters are taken into consideration. The defendant was not so naive in the field as to have no knowledge of the national expanse of radio broadcasting. In sum, when a Connecticut defendant enters into a contract with a person from California, whom he meets at a Florida national convention, to provide services outside of Connecticut, it certainly is not overreaching to choose Los Angeles, California as the place to settle the parties' disputes.
CONCLUSION
The forum clause within the contract is not unfair or inconvenient, and is therefore constitutionally enforceable. The plaintiffs obtained a valid judgment in California that does not violate due process, and is therefore entitled to full faith and credit, pursuant to the United States constitution, in Connecticut. The defendant's claim that he would not have entered into the contract with the plaintiffs had he known he was giving up the right not to be amenable to suit in California does not create a genuine issue of material fact as to the validity of the contract, which is clear on its face. Therefore, the plaintiffs' motion for summary judgment is granted.