[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On July 31, 2000, the plaintiff, New Horizon Financial Services, a Connecticut corporation, filed a three count complaint against the defendants, Mortgage Search and Acquisition (MSA), a sole proprietorship[1] based in Texas, and its President Tami Coffey. The plaintiff alleges in the first count that on or about October 25, 1999, it entered into an agreement (first agreement) with the defendants, whereby the defendants were to provide executive CT Page 3009 search services within an agreed timetable for the plaintiff's banking business. These services involved identifying, locating, screening, investigation, rating, and presenting qualified individuals to the plaintiff for employment purposes. The plaintiff paid the initial sum of $10,666.00 on the first agreement. The plaintiff alleges that the defendants failed to perform their obligations under the first agreement, resulting in damages to the plaintiff. The first count, therefore, states a breach of contract claim.
The second count of the complaint alleges that on or about November, 1999, the plaintiff entered into a second agreement (second agreement) with the defendants, under which the defendants were to prepare a business plan based on the defendants' providing the services required under the first agreement. The plaintiff distributed this plan to investors and business associates and made representations to investors based upon it. Based on the alleged failure of performance under the first agreement, the plaintiff alleges that it lost investors and has strained its relationship with its business associates, resulting in damages to the plaintiff.
The third count of the complaint alleges that on or about October 27, 1999, the plaintiff entered into a third agreement (third agreement) with the defendants whereby the defendants agreed not to disclose any "confidential information," as defined in the agreement. The plaintiff alleges that the defendants breached the agreement by disclosing such confidential information to third parties, resulting in damages to the plaintiff. The third count, therefore, states a breach of contract claim.
The defendants moved to dismiss the action, pursuant to Practice Book § 10-31(a)(2), on the ground that the Connecticut court does not have personal jurisdiction over the defendants. In their memorandum of law, the defendants argue that neither Connecticut's long-arm statute nor the minimum contacts required under the due process clause of the fourteenth amendment to the Constitution are satisfied. The plaintiff filed a memorandum of law in opposition to the defendants' motion, accompanied by an affidavit, pursuant to Practice Book § 10-31
(b).[2]
"A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts." (Internal quotation marks omitted) Coughlinv. Waterbury, 61 Conn. App. 310, 314 ___ A.2d ___ (2001). "[I]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) CT Page 3010Lawrence Brunoli, Inc. v. Branford, 247 Conn. 407, 410-11, 722 A.2d 271
(1999). Practice Book § 10-31(a)(2) provides that "a motion to dismiss shall be used to assert . . . lack of jurisdiction over the person." "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." Upson v. State,190 Conn. 622, 624, 461 A.2d 991 (1983). Generally, "if a challenge to the court's personal jurisdiction is raised by a defendant, either by a foreign corporation or by a nonresident individual, the plaintiff must bear the burden of proving the court's jurisdiction." Knipple v. VikingCommunication, 236 Conn. 602, 607-08, 674 A.2d 426 (1996).
"When a defendant files a motion to dismiss challenging the court's jurisdiction, a two-part inquiry is required. The trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Brackets in original; internal quotation marks omitted.) Id., 606.
A. The Long-arm Statute Inquiry
In their memorandum in support of their motion to dismiss, the defendants argue that Coffey's conduct on behalf of MSA is insufficient for the court's exercise of jurisdiction over the defendants because Coffey did not transact any business within Connecticut for the following reasons. The defendants argue that all agreements between the parties were negotiated in Texas and that all of Coffey's services under the agreements were performed in Texas. Further, the defendants argue that the parties agreed that the first agreement would be subject to Texas law. Finally, the defendants argue that neither Coffey nor any of her employees ever traveled to Connecticut and that all communications with the plaintiff were carried out by email or telephone.
In support of its opposition to the defendant's motion to dismiss, the plaintiff has filed a memorandum of law accompanied by a copy of the parties' first agreement and a copy of a search memo prepared by Coffey (Exhibit A) and the affidavit of Lawrence Rezak, a member of the plaintiff.
The parties disagree on where their agreements were negotiated. Rezak asserts in his affidavit that the October 1999 agreement was negotiated by him from his office in Stamford, Connecticut and executed there as well. The defendants argue that the agreement was negotiated in Texas. Rezak further avers, contrary to the defendants' argument, that at no time did the parties agree "that jurisdiction over the agreement would be CT Page 3011 in the State of Texas or that Texas law should apply to the agreement."
When adjudicating a motion to dismiss where no evidentiary hearing has been requested by the parties, the court accepts all undisputed factual allegations in the complaint and affidavits when determining whether the plaintiff has sustained its burden to prove that the court has personal jurisdiction. Knipple v. Viking Communication, supra, 236 Conn. 608-09. The plaintiff has alleged in its complaint that "[t]he Defendants have derived substantial benefit from services rendered in the area of Stamford, Connecticut and expected or should reasonably have expected their acts to have consequences in the State of Connecticut." Rezak avers in his affidavit that "[o]n or about October 25, 1999, New Horizon Financial Services entered into an agreement with the defendants in this action for the purpose of the defendants rendering job search services in Stamford, Connecticut." The defendant has not disputed these allegations. In addition, the search summary, an October 25, 1990 memo from Coffey to Rezak submitted by the plaintiff, states that the defendants will develop a "Target List" of candidates and/or candidate firms to approach in Connecticut, that they will conduct independent research including the interviewing of MIT Reps, Realtors and local MBA officers and that "MSA will essentially "blanket' the market in order to identify, and ultimately recruit, the best candidates for [the plaintiff's] company."
Also relevant to the court's determination of jurisdiction is the defendants' July 7, 2000 demand letter contained in this case file,[3]
which indicates that "presenting a candidate" under the parties' agreement entails identifying the candidate, interviewing the candidate by phone and subsequently arranging for an interview. The letter further states that a total of seven candidates were presented to the plaintiff.
"The General Statutes do not define what the phrase "transacts any business' means in the context of § 52-59b. We note, however, that in enacting § 52-59b, the legislature used New York Civil Practice Law § 302 (McKinney 1980-81 Sup.) as a model. . . . We therefore find pertinent the judicial interpretations given to that New York statute. . . . In accord with that interpretation, we construe the term "transacts any business' to embrace a single purposeful business transaction. George Reiner Co. v. Schwartz,41 N.Y.2d 648, 363 N.E.2d 551 (1977). . . ." (Citations omitted.) Zartolis v. Nisenfeld, 184 Conn. 471, 474,440 A.2d 179 (1981).
"In the George v. Reiner case, the New York Court of Appeals found jurisdiction over a nonresident defendant who worked outside of New York and came to New York only one time to negotiate an employment contract CT Page 3012 with the plaintiff company . . . A purposeful business transaction is one in which the defendant has engaged in some form of affirmative conduct allowing or promoting the transaction of business with the forum state."Integrated Corp. Rel. v. Stolimeyer, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 363254 (November 16, 1999, Melville,J.).
The defendants' search for candidates in Connecticut to present to the plaintiff and all that is entailed in that process necessarily engages the defendants in a form of affirmative conduct allowing or promoting the transaction of business within Connecticut, notwithstanding the defendants' operation from Texas. Section 52-59b therefore authorizes the assertion of jurisdiction over the defendant.
B. The Due Process Inquiry
Having determined that jurisdiction may be exercised pursuant to §52-59b, this court must next determine whether the exercise of jurisdiction over the defendants would violate federal constitutional principles of due process. Knipple v. Viking Communications, supra,236 Conn. 606. The court must determine whether the nonresident defendants have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Thomason v. Chemical Bank, 234 Conn. 281, 287,661 A.2d 595 (1995), citing International Shoe Co. v. Washington,326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness. `[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" United States Trust Co. v.Bohart, 197 Conn. 34, 41, 495 A.2d 1034 (1985), quoting World WideVolkswagen Corp. v. Woodson, 44 U.S. 286, 287, 100 S.Ct. 559,62 L.Ed.2d 490 (1980)).
The defendants' contacts with Connecticut were sufficient to satisfy due process requirements. The defendants argue that MSA and Coffey did not purposefully avail themselves of the privileges of conducting activities within Connecticut. As previously explained, however, the defendants could only perform the services required under the parties' agreement by reaching into Connecticut, as they did, to locate and contact the resources, i.e., the potential employees. "[T]he totality of the defendant's conduct and connection with this state . . . must be considered . . . to determine whether the defendant could reasonably have anticipated being haled into court here." Frazer v. McGowan, 198 Conn. 243,249, 502 A.2d 905 (1986). Given the totality of the defendants' conduct CT Page 3013 and connection with Connecticut in the present case — entering into an agreement with a Connecticut client where the defendants' performance under the agreement was focused solely in the geographic area of Stamford, Connecticut — the court may find that it was not unforeseeable, and the defendants could reasonably have anticipated being haled into court here.
The defendants additionally argue that the first agreement confirms that both parties agreed that any actions that arose under the contract would be governed by Texas law given that all executive searches originated from there. The plaintiff asserts in response that the contract does not specify jurisdiction within the state of Texas, nor that Texas law would govern. This is supported by the evidence. As previously discussed, the first agreement contains no choice of law provision, nor a forum selection provision, and the defendants did not offer any additional evidence to support their argument. The defendants also appear to be arguing that the plaintiff must have impliedly agreed that Texas law governs by the mere fact that it knew that all searches would be conducted from Texas, as provided by the first agreement. Even assuming, however, that knowledge of the sole fact that the searches would be conducted from Texas could give rise to an implied agreement on the choice of Texas law, "[a] choice of law provision cannot be construed as a voluntary submission. to the personal jurisdiction of [a state's courts) in the absence of any express contractual understanding to that effect." Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583, 588 (2d Cir. 1965).
Finally, "jurisdiction may not be asserted in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." (Internal quotation marks omitted.) United States Trust Co. v. Bohart, supra,197 Conn. 42. The defendants have not shown that defending this action in Connecticut is gravely and unfairly inconvenient.
The plaintiff has met its burden of proof and has established facts sufficient for this court to exercise personal jurisdiction over the defendants pursuant to General Statutes § 52-59b (a)(1), and in conformity with the federal due process requirements for long-arm jurisdiction over a nonresident individual and sole proprietorship. Accordingly, the defendants' motion is hereby denied.
HICKEY, J.