[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS (NO. 102)
This is an action brought to enforce a Pledge and Security Agreement (hereinafter "Pledge") between the defendant as Pledgor and the plaintiff as Pledgee and a Guaranty Agreement (hereinafter "Guaranty").
Prior to January of 1999, the plaintiff, then known as The Marketing Center ("TMC"), operated the business in question through another Connecticut corporation known as The Scan Centre, Inc. ("TSC"). The principal business office of TMC was in Brookfield, Connecticut. Both TMC and TSC were owned by a couple named Richardson who also lived in Brookfield. When the defendant, a California resident, began negotiating with the Richardsons in 1998 to purchase the business on behalf of an investor group, the defendant and his agents began communicating with the Richardsons by phone, facsimile, etc., and he also came to Connecticut on at least one occasion for that purpose He additionally sent his accountant to this state to confer with the Richardsons regarding the financial records of TMC and TSC. In January of 1999, a Purchase Agreement and Plan of Reorganization was executed. The defendant and his investors formed JPG Enterprises, Inc. (later known as "Big Ballot") to purchase the business; the defendant became its President. JPG then acquired the TSC stock and certain of the assets and liabilities of TMC, which changed its name to Blanc Page. Blanc Page, however, continued to be wholly owned by the Richardsons.
On March 9, 1999, a Promissory Note (hereinafter "Note"), the Pledge, and the Guaranty were executed by the defendant. Simply put, part of the consideration for the Purchase Agreement was in the form of a Note from JPG to Blanc Page for $1.0 million. Blanc Page was induced to accept that Note by virtue of the defendant's agreement to give his personal guaranty of JPG's promise to pay $1.0 million and to secure that Guaranty with his pledge of shares in an unrelated corporation.
JPG (now known as Big Ballot) defaulted on the Note in December of 2001 CT Page 11822 when it failed to make the payments due; thereafter, Blanc Page exercised its option to accelerate the Note obligations. This suit seeks enforcement of the defendant's personal guaranty to pay the Note obligations and seeks declaratory relief concerning the registration of the stock shares in favor of Blanc Page as provided in the Pledge.
Specifically, Count One seeks to enforce the obligation of Big Ballot to pay $1.0 million. That obligation was memorialized in part by the Pledge whereby the defendant pledged his shares of capital stock in an unrelated corporation as security. The defendant does not contest this court's jurisdiction with regard to that count. Count Two seeks to hold the defendant liable under the Guaranty, under the terms of which the defendant guaranteed the plaintiff "full and prompt payment and performance of the indebtedness" of Big Ballot under the Note. As regards that Count, the defendant has moved to dismiss (and/or for an evidentiary hearing) on the basis that: (1) the defendant was not, on the date of the motion or at the time the action was commenced, a resident of this state and therefore is not subject to in personam jurisdiction under Connecticut General Statute § 52-59b, our long-arm statute; and (2) the Amended Note dated May 3, 2001,[1] also secured by the Pledge Agreement and Guaranty, was drawn in California and was expressly to be governed by that state's laws.[2] He therefore claims that, as regards Count Two, there is no personal jurisdiction over him. The parties appeared before this court on July 29, 2002, at which time argument was heard and additional time granted for submission of supplemental briefs, all of which have been received and examined.
Paragraph 16 of the Pledge provided for the Pledgor's assent to the exercise of jurisdiction in a Connecticut state court in Fairfield Count "for the purpose of any litigation to which Pledgee may be a party and which concerns this Agreement or the Obligations." The "Obligations" are defined in Paragraph 2 of the Pledge as follows: "This Agreement is made, and the security interest hereby is granted to Pledgee, to secure prompt payment of the Note." Under Paragraph 1 of the Guaranty, the defendant guaranteed to the plaintiff full and prompt payment of "the indebtedness evidenced by the Note. . . ." That indebtedness is therefore the same obligation secured in the Pledge — $1.0 million.
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v.Mayer, 218 Conn. 531, 544 (1991). "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." Upson v. State, 190 Conn. 622, 624 (1983). "The motion to CT Page 11823 dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." Shay v. Rossi,253 Conn. 134, 140 (2000). "When a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable from the face of the record, the burden of proof is on the plaintiff to present evidence which will establish jurisdiction." (Citations omitted.)Standard Tallow Corp. v. Jowdy, 190 Conn. 48, 54 (1983)
In determining whether there is personal jurisdiction, the trial court is faced with a two-part inquiry. "Its first obligation was to decide whether applicable state long-arm statute authorizes the assertion of jurisdiction. . . . If the statutory obligations were met, its second obligation was then to decide whether the exercise of jurisdiction . . . would violate constitutional principles of due process." Frazer v.McGowan, 198 Conn. 243, 246 (1986). Personal jurisdiction may be created through consent or waiver. United States Trust Co. v. Bohart, 197 Conn. 34,39 (1985). "Connecticut case law is clear that the courts will uphold an agreement of the parties to submit to the jurisdiction of a particular tribunal." Phoenix Leasing, Inc. v. Kosinski, 47 Conn. App. 650, 653
(1998)
The defendant's argument that, while the defendant specifically consented to jurisdiction vis-a-vis the Pledge, he did not consent to the court's exercise of personal jurisdiction vis-a-vis the Guaranty, is unpersuasive. It is so that the Guaranty did not specify the venue for litigation nor does the defendant expressly consent therein to a Connecticut tribunal's exercise of such jurisdiction. Yet the Pledge specifically provided the defendant "irrevocably consents to the jurisdiction" of this county's state courts "for the purpose of any litigation to which Pledgee may be a party and which concerns this Agreement or the Obligations." Pledge, Par. 16. Both the Pledge and the Guaranty were intended to provide security for the Note obligations; the Pledge was intended to provide collateral (the aforementioned stock) to secure the defendant's personal guaranty of the Note obligations. Both documents, executed by the defendant on the same date, serve to provide the plaintiff security for the obligations assumed by the defendant under the Note. It is not reasonable to suggest this state court may exercise personal jurisdiction with regard to the Pledge but may not do so with regard to the Guaranty since the purpose of the Pledge is to secure the defendant's personal guaranty. Both documents expressly state they are to be governed by Connecticut law. Pledge, Par. 11; Guaranty, Par. 12. The defendant expressly consented to this state court's exercise of personal jurisdiction in any litigation in which the plaintiff (as Pledgee) was a party and which concerned the obligations of the Note. The Guaranty is no less relevant to those obligations than is the Pledge which secured the CT Page 11824 Guaranty.
The defendant argues additionally there is not personal jurisdiction pursuant to our long-arm statute because he is a California resident (and was at the time the documents were executed), owns no property in this state, does not "transact any business within the State of Connecticut or maintain any regular activity within the state", understood "the Note" was to be governed by California law, and, inter alia, because the Pledge and Guaranty were executed in California. Affidavit of defendant. Under Connecticut General Statute § 52-59b (a)(1), the defendant is amenable to jurisdiction here; his assertion to the contrary notwithstanding, it is clear he in fact transacted business here. While a California resident, he negotiated with the Richardsons, Connecticut residents, to purchase TMC. He communicated with them, their accountant, and their attorney on numerous occasions. He sent his accountant to Connecticut to confer with the Richardsons' accountant. As President of JPG, he acquired the stock and certain other assets and/or liabilities of companies wholly owned by the Richardsons. For a period of time, JPG did business under the name of TMC and, effective September of 1999, Gehl ultimately closed the Brookfield, Connecticut, office at which the Richardsons provided consulting services (which office was then owned and operated by the defendant's company — JPG) The defendant clearly did business in this state. He even opened a bank account with a Connecticut bank on behalf of JPG d/b/a TMC and received a line of credit. Even after the Brookfield office was closed, the defendant continued to employ a full-time employee who worked out of her home in Newtown, Connecticut. Under this state's decisional law, a defendant transacts business within the state even when he or she engages in a single purposeful business transaction here. Zartolas v. Nisenfeld, 184 Conn. 471, 474 (1981). In that case, as here, the execution of a document in issue was performed outside the state; yet our Supreme Court concluded not only did the warranties within the deed in question anticipate litigation in this state (as surely the parties did here as demonstrated by their choice of law provision in the Pledge and Guaranty) but that "the fundamental incidents of this warranty deed render the defendants' purposeful execution of it a `transaction of any business within this state.'" Id., at 476. (Internal citation omitted.) The Court continued:
 In determining whether the plaintiffs' cause of action arose from the defendants' transaction of business within this state we do not resort to a rigid formula. Rather, we balance considerations of public policy, common sense, and the chronology and geography of the relevant factors. Id., at 477.
CT Page 11825
The defendant's in-state activities are more than sufficient to satisfy the requirements of our long-arm statute.
Nor can it be said the exercise of personal jurisdiction under these circumstances offends due process. The Connecticut Supreme Court, inUnited States Trust Co. v. Bohart, 197 Conn. 34 (1985), found forum selection provisions met the tests of foreseeability and fairness — the touchstones of due process. Id at 41. Clearly it was foreseeable to this defendant that his conduct here and his connections to this state were such that he could reasonably anticipate suit here in the event of default. Nor can it be said the exercise of jurisdiction here is unfair because defending in this courthouse is so difficult as to severely disadvantage him. The defendant is represented by able counsel and it cannot now be said the necessity to travel to this state to defend this suit will be any more frequent, costly, or inconvenient than was his prior travel here as above referenced. Further, he has consented to jurisdiction here regarding the first count of the complaint. Due process is satisfied.
The defendant moved for dismissal of Count Two "or in the alternative, for a full Evidentiary Hearing" to determine whether this court had jurisdiction. "When a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinative from the face of the record, the burden of proof is on the plaintiff to present evidence which will establish jurisdiction." Standard Tallow Corp., supra, at 54. The court, however, need not conduct an evidentiary hearing in deciding a pretrial jurisdictional motion if the court finds the affidavit and supporting memoranda to be sufficient. Hagar v. Zaidman, 797 F. Sup. 132
(D. Connecticut 1992). Having examined multiple memoranda of law and numerous affidavits, exhibits, and cases provided and the parties having presented oral argument, the court concludes no additional evidence is required.
The Motion to Dismiss or for Evidentiary Hearing is for the stated reasons DENIED.
 ___________________ B.J. SHEEDY, JUDGE