THE SECOND NATIONAL BANK OF NEW HAVEN, TRUSTEE *v.* HARRIS TRUST AND SAVINGS BANK ET AL.

SUPERIOR COURT    NEW HAVEN COUNTY    FILE No. 126022
AT NEW HAVEN

276

Memorandum filed August 30, 1971

*Daggett, Colby & Hooker,* of New Haven, for the plaintiff.

*Thompson, Weir & Barclay,* of New Haven, for the named defendant and the defendant Mary Washburne.

*Gordon P. Chambers,* of New Haven, for the defendants Catherine, James, Margaret, Daniel and Peter Washburne.

*Wiggin & Dana,* of New Haven, for the defendant Charles Marsh.

SHEA, J. In this action the plaintiff trustee seeks a determination of how the portion of a trust fund subject to a power of appointment is to be distributed; a judicial settlement of its accounts; an order fixing and allocating attorneys' fees; and other equitable relief. All of the defendants have appeared, and their answers admit paragraphs of the complaint alleging facts which may be summarized as follows:

In New Haven on April 21, 1922, Caroline Haven Trowbridge, a resident of that city, created an inter vivos trust with the plaintiff as trustee. The income of the trust was given to the settlor's daughter, Margaret Trowbridge Marsh, and she was also given a general testamentary power of appointment over one-half of the corpus. The remaining one-half, as well as the half subject to the power in default of its exercise, would be distributed to Margaret's surviving children or issue per stirpes or, if there were none, to another daughter of the settlor, Mary Brewster Murray, or her surviving issue per stirpes. During the life of the settlor, a power was reserved to "revoke, modify or alter" the terms of the trust "respecting the payment of income." The settlor, Caroline, died in New Haven on June 26, 1941, without having exercised this power.

Margaret, the life tenant and donee of the testamentary power, a resident of Winnetka, Illinois,

died on April 13, 1969, leaving a will purporting to exercise the power by creating another trust, giving the income to her daughter, Mary Marsh Washburne, for a period of thirty years. At that time the trust estate would be distributed to Mary, if living, or, if not, to her surviving children or their descendants per stirpes, with outright distribution at age twenty-one. On April 4, 1949, before she executed her will, Margaret had partially released her power of appointment, converting it into a special testamentary power by limiting its exercise to the benefit of the class described in subsection (2) (A) of § 811 (f) of the Internal Revenue Code of 1939, as amended, 56 Stat. 942, which included her descendants.

Mary, the named beneficiary of the power of appointment as exercised, was born on October 25, 1929. As one of the two surviving children of Margaret, she would share equally with her brother, Charles Allen Marsh, the half of the trust created by Caroline subject to the power, in default of its exercise. If Margaret's exercise of the power under her will is fully effective, the defendant Harris Trust and Savings Bank, as executor and trustee, would receive this half of the trust to pay the income to Mary for thirty years following her mother's death, and ultimately to distribute the corpus to Mary. If she did not live that long, upon her death the defendant trustee would make distribution to Mary's surviving children or their surviving descendants.

It appears that all of the living persons having any interest in the trust have been made parties. A guardian ad litem has been appointed to represent any unborn or undetermined persons who may have an interest and also to represent the five children of Mary, all of whom are minors.

# I

The first problem is whether the exercise of the testamentary power of appointment by Margaret's will is invalid because of a claimed violation of the rule against perpetuities.

It is well established that a donee of a power of appointment, in exercising the power, acts as a mere conduit of the donor's bounty. "Whenever such a power is exercised, the validity of the appointment is determined by precisely the same rule as if the original testator, who created the power, had made in his own will the same provision in favor of the same appointee." *Bartlett* v. *Sears,* 81 Conn. 34, 42. "The appointment is 'read back' into the instrument creating the power, as if the donee were filling in blanks in the donor's instrument." 6 American Law of Property § 24.34.

So far as perpetuities are concerned, the period of the rule is reckoned from the date of creation of the power, not from the date of its exercise. Gray, Rule against Perpetuities (4th Ed.) § 515, p. 499. Where the power has been created by a will, the period is measured from the time of the death of the testator. Gray, op. cit. § 520; Simes & Smith, Future Interests (2d Ed.) § 1226. Where a deed is the source of the power, the date of delivery would ordinarily start the running of the period. Gray, loc. cit.; Simes & Smith, loc. cit.

In the case of inter vivos instruments, there is an exception for revocable transfers, for the reason that the policy of the rule is not violated where the grantor may at will terminate any future interests by revoking the grant. Where such an unconditional power of revocation is reserved, the period of perpetuities is calculated from the time the power of revocation ceased, usually at the death of the grantor unless the power was released earlier. 6 American Law of Property § 24.59; Gray, op. cit. § 524.1.

In this case, the defendants who seek to uphold the validity of the exercise of the power by Margaret's will claim that Caroline did retain a power to revoke the trust. The provision upon which they rely is paragraph (i) of the trust instrument, which reads as follows: ". . . as a measure of protection against possible contingencies, I hereby expressly reserve to myself power to revoke, modify or alter the terms hereof respecting the payment of income during my own life, by an instrument in writing, signed, dated and acknowledged, and delivered to the trustee." It seems clear that a power "to revoke, modify or alter the terms . . . respecting the payment of income" would not include a power to revoke the provisions for disposition of the principal of the trust. Such a partial power of revocation could affect only the life tenant, Margaret, during the life of the settlor, Caroline. Such a power would not qualify for the exception applicable to a full and unconditional power of revocation, because the remoteness of the future interests created could not be affected by any exercise of the power. 6 American Law of Property § 24.59.

Since the demise of our Connecticut Statute on Perpetuities in 1895, the common-law rule has been followed that no future interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest. *Wilbur* v. *Portland Trust Co.*, 121 Conn. 535, 537; Cleaveland, Hewitt & Clark, Probate Law and Practice §§ 446, 447. As applied to this case, the rule would bar any future interest which might not vest within twenty-one years after the life of some person in being on April 21, 1922, the date the trust was established. Since Mary was not born until October 25, 1929, she was not in being at the creation of the trust and her life cannot be taken as a measuring life under the rule against perpetuities.

The only relevant life mentioned in the trust is that of Margaret, and, therefore, any valid future interest must vest no later than twenty-one years after her death on April 13, 1969.

In exercising the power of appointment, Margaret in her will used the language of an absolute gift to Mary of the income for thirty years and then a distribution to her of the principal of the trust. The next sentence adds the provision that upon Mary's death within the thirty-year period (or prior to the death of the testatrix, Margaret) the principal of the trust would be distributed to Mary's children or descendants of deceased children surviving her. Such unconditional words of gift would ordinarily be construed as creating a vested interest subject to defeasance upon the occurrence of the condition subsequent contained in the later clause. *Howard v. Batchelder,* 143 Conn. 328, 336. "If the conditional element is incorporated into the description of, or into the gift to, the remainder-man, then the remainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the remainder is vested." Gray, op. cit. § 108; *Howard v. Batchelder,* supra, 334. Such exaltation of verbalism over substance has been criticized, but it is rigidly adhered to in the legalistic sophistry which comprises much of the lore of future interests. As it was once remarked, "I am quite aware that this is all largely [a] matter of words, but so is much of the law of property; and unless we treat such formal distinctions as real, that law will melt away and leave not a rack behind." *Commissioner* v. *City Bank Farmers' Trust Co.,* 74 F.2d 242, 247.

"An interest is 'vested' for purposes of the Rule when the following conditions exist: a. any condition precedent attached to the interest is satisfied, and b. the taker is ascertained, and c. where the interest is included in a gift to a class, the exact

amount or fraction to be taken is determined." 6 American Law of Property § 24.18. The language creating the gift to Mary imposes no condition precedent, but rather a condition subsequent, i.e. her death within thirty years after Margaret's death. Since the gift is to a named person the identity of the taker is established. The third requirement (c) is not applicable to a gift to an individual.

The construction of the gift of the remainder to Mary as vested rather than contingent is reinforced by the intermediate gift of the income to her. 6 American Law of Property § 24.19. A gift in favor of a named individual has historically been treated as vested and not subject to the rule unless it is expressly subject to a condition precedent. Restatement, 4 Property § 370, comment g. The preference of the law for vested rather than contingent interests certainly dictates such a construction in this case, where even the grammatical form of a condition subsequent has been observed by the draftsman. That the use of a condition subsequent rather than precedent is often the touchstone of validity in perpetuities cases is demonstrated by the following textbook illustrations: *"Case 20.* T bequeaths a fund in trust to pay the income to A for life and then to pay the principal to such of A's children as shall reach the age of twenty-five. Reaching the age of twenty-five is a condition precedent attached to the gift to the children. Assuming that A survives the testator and can have further children, an after-born child of A can reach twenty-five at a date later than twenty-one years after lives in being at T's death. Therefore the remainder to A's children is void. *Case 21.* T bequeaths a fund in trust to pay the income to A for life and then to pay the principal to A's children, but if all of A's children die under the age of twenty-five, then to pay the principal to B. Again the condition is too remote. But it is a condition subsequent.

The remainder to the children is vested subject to divestment upon a remote condition; the divesting contingency is void; therefore the children have an indefeasibly vested remainder." 6 American Law of Property § 24.19, p. 60. It is well recognized that the form of language used rather than the substance of the condition is determinative as to whether the condition is precedent or subsequent. 5 American Law of Property § 21.31, p. 177. "Whether a remainder is vested or contingent depends upon the language employed." Gray, op. cit. § 108.

In a case similar in many respects to this one, an appointment was made to a named great-grandnephew, a year old at the time of exercise of the power, by the will of the donee of a power created by an inter vivos transfer, of income until age twenty-five, and then of principal when he attained that age; in the event of his death prior thereto, the principal would be distributed to the boy's father, who was named. It was held, despite the use of some contingent language, that the remainder to the great-grandnephew was valid under the rule, because it might be construed as vested subject to defeasance upon death prior to age twenty-five. The gift over to the father was ruled invalid as in violation of the terms of the power. *Dean* v. *First National Bank,* 217 Ore. 340.

The gift to Mary's children, following the same verbal formalism, is a contingent remainder, because it is expressly subject to the condition that they survive their mother and that she not live until termination of the thirty-year trust. *White* v. *Smith,* 87 Conn. 663, 669–73. It is also contingent because, as a gift to a class (surviving children and surviving descendants of deceased children), the fractional interest of each member of the class cannot be ascertained until the contingency (Mary's death) happens. Gray, op. cit. §§ 369–375.

It is well established that the rule against perpetuities does not affect vested interests, even though enjoyment may be postponed beyond the period of the rule. *Connecticut Trust & Safe Deposit Co.* v. *Hollister,* 74 Conn. 228, 232; Restatement, 4 Property § 386, comment j. It would not operate, therefore, to invalidate either the gift of the income to Mary for life or thirty years or the gift of the remainder after the thirty years. *Colonial Trust Co.* v. *Brown,* 105 Conn. 261, 272; *Bartlett* v. *Sears,* 81 Conn. 34, 44. Both of these gifts vested in interest at the death of Margaret within the period of the rule, and the postponement of enjoyment beyond the period of the rule would not invalidate them. *Howard* v. *Batchelder,* 143 Conn. 328, 336.

The permissible duration of a trust is not governed by the rule against perpetuities. Restatement, 4 Property § 378; Gray, op. cit. §§ 232–246. It is no objection, therefore, that Mary's life estate may last beyond the period of the rule. It is also of no significance that her remainder interest may be defeated by her death, which may occur after that time. A vested remainder is exempt from the rule even though it may be subject to complete defeasance. Restatement, 4 Property § 370.

The rule does bar the contingent remainder to Mary's children because it may vest more than twenty-one years after the death of Margaret, whose life must be taken as the measuring life. This result, abhorrent to the rule, would occur if Mary should die more than twenty-one but less than thirty years after her mother.

It is argued that the court should apply the cy pres doctrine to save the remainder to Mary's children by reducing the period of the trust to a maximum of twenty-one years. In a similar case, the Supreme Court of Hawaii expressly applied this doctrine to revise the testator's will as suggested.

*In re Estate of Chun Quan Yee Hop,* 52 Haw. 40. This judicial innovation has received favorable comment, but such a change in the established law of this state ought to be reserved for our Supreme Court. The earlier case of *Edgerly* v. *Barker,* 66 N.H. 434, in which the cy pres doctrine was first applied by any court in a perpetuities situation, is the subject of a lengthy condemnation by Professor Gray. Gray, op. cit. §§ 857–893.

It is also claimed that General Statutes § 45-95 is applicable. This statute embodies the so-called "second look" doctrine, and reads as follows: "In applying the rule against perpetuities to an interest in real or personal property limited to take effect at or after the termination of one or more life estates in, or lives of, persons in being when the period of said rule commences to run, the validity of the interest shall be determined on the basis of facts existing at the termination of such one or more life estates or lives. For the purpose of this section, an interest which must terminate not later than the death of one or more persons is a life estate although it may terminate at an earlier time." This statute permits the validity of the interests created to be determined on the basis of the facts existing upon the death of Margaret, the measuring life under the rule against perpetuities. In fact, this has been the reference point for the court's consideration of the validity of the interests involved, because, apart from the statute, the actual exercise of the power of appointment, and not the possibility of its exercise in some other manner, is the criterion under the rule. Gray, op. cit. § 510. "In the case of all powers of appointment . . . facts can be considered which exist at the time of the exercise of the power." 6 American Law of Property § 24.24, p. 77. The conclusion that the remainder to Mary's children is invalid would not be changed unless the statute were construed to

authorize a second look after Mary's life, an interpretation which its language does not support.

Another statute relied upon is General Statutes § 45-96, which reads as follows: "If an interest in real or personal property would violate the rule against perpetuities as modified by section 45-95 because such interest is contingent upon any person attaining or failing to attain an age in excess of twenty-one, the age contingency shall be reduced to twenty-one as to all persons subject to the same age contingency." It seems too clear for argument that the remainder to Mary's children is not "contingent upon any person attaining or failing to attain an age in excess of twenty-one." Section 45-96 is not applicable.

"If future interests created by any instrument are avoided by the Rule against Perpetuities, the prior interests become what they would have been had the limitation of the future estate been omitted from the instrument." Gray, op. cit. § 247. Obviously, the consequences which follow upon the invalidity of a subsequent interest depend upon the intention of the donor. Restatement, 2 Property § 228; 5 American Law of Property § 21.48. "A presumption is generally recognized that the precedent interest becomes indefeasible as a result of the ineffectiveness of the divesting interest . . . ." 5 American Law of Property § 21.48; Restatement, 2 Property § 229. "But it will take clear language to show an intention to have the determining limitation taken separately from the remote gift. . . . If the prior estate be a fee simple the void conditional limitation cannot, it is submitted, thus operate as a contingent termination of the prior estate." Gray, op. cit. § 250. "Where a divesting interest is void, the interest which would otherwise have been divested becomes absolute." 6 American Law of Property § 24.47, p. 124.

A gift of trust principal payable at an age beyond the period of the rule, subject to a limitation over in the event of nonattainment of that age, is a common occasion for the application of these principles to result in an indefeasibly vested remainder. Id., p. 125 (Case 72) ; Restatement, 4 Property § 384, comment g. "When a subsequent condition or limitation over is void, . . . the estate becomes vested in the first taker, discharged of the condition or limitation over, according to the terms in which it was granted or devised; if for life, it then takes effect as a life estate; if in fee, then as a fee simple absolute." *Howe* v. *Hodge,* 152 Ill. 252, 279; *Safe Deposit & Trust Co.* v. *Sheehan,* 169 Md. 93, 109.

Under these principles, the gift of the remainder to Mary becomes indefeasibly vested because of the invalidation of the contingent remainder to her children.

In summary, the court has concluded that Mary has a valid income interest, in the half of the trust subject to the power of appointment, for thirty years and is then entitled to receive the principal. If she dies before then, the principal would be distributed to her estate, because her remainder has become indefeasibly vested.

Accordingly, it is ordered that the plaintiff trustee turn over to the defendant Harris Trust and Savings Bank one-half of the trust, to be held by that defendant to pay the income (including accumulated income) to the defendant Mary Marsh Washburne until April 13, 1999, when the principal shall be distributed to her. In the event of her earlier death, the principal shall be distributed to her estate. The court's advice is not sought with respect to any question pertaining to the remaining half of the trust fund.

## II

Prior to 1963 the Superior Court, as the only court of general equitable jurisdiction, had exclusive jurisdiction over the final settlement of the accounts of inter vivos trusts. See *Preston* v. *Preston,* 102 Conn. 96, 121. The enactment of an amendment to General Statutes § 45-267 providing that such accounts "may" be submitted to the Probate Court was intended to give the probate courts jurisdiction of this subject matter concurrent with the Superior Court, as in the case of testamentary trusts. Public Acts 1963, No. 480; see *Phillips* v. *Moeller,* 147 Conn. 482, 489. It was not intended to oust the Superior Court of its historical jurisdiction in this field, nor could such a result be achieved by legislation alone. *Walkinshaw* v. *O'Brien,* 130 Conn. 122, 142.

Although the court may have a discretion not to exercise jurisdiction in this matter in deference to the Probate Court's greater expertise in this field, the resolution of all of the questions in a single proceeding is the most expeditious procedure. Accordingly, the court finds that the account of the plaintiff trustee is true. It is allowed and approved.

## III

Since all of the questions raised for advice by the plaintiff trustee pertained exclusively to the half of the trust subject to the power of appointment, it would be inequitable to burden the other half, where no dispute is involved, with the payment of any fees or expenses related to the construction issues. *Hartford Connecticut Trust Co.* v. *Hartford Hospital,* 141 Conn. 163, 174. Some part of the services of the attorneys, particularly the services of the attorney for the plaintiff trustee, probably relates to the part of the case seeking approval of the account. Any such portion should be charged to

the entire estate. After counsel submitted their original requests for allowances, some additional services were rendered in investigating certain questions raised by the court. Accordingly, counsel are directed to submit revised allowance requests.

Counsel are directed to prepare the judgment file for approval.

Judgment may enter accordingly.