[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Alexander Priest and Julia Priest, are the niece and nephew of the defendant, Andrew J. Lynn, and the son and daughter of Christine Priest (Christine), the defendant's sister. The plaintiffs' maternal grandparents are Andrew A. Lynn (Adam) and Lillian E. Lynn (Locia). Adam died in 1982, Christine died in 1996, and Locia died in 2000. Involved in this case are trust documents executed by Adam and Christine, the settlement of Christime's estate, the settlements of Adam's and Locia's estates, a conveyance of land by Adam, and a Florida partnership created by the defendant individually and as trustee of the Christine Priest Trust.
On May 3, 2002, the plaintiffs filed a summons and seven count complaint seeking from the defendant accountings for and distributions from Adam and Locia's trusts and estates, an accounting for and distributions from Christine's trust and estate, and damages for violation of trustee obligations, failure to distribute profits from the Florida partnership, and diversion of partnership and trust funds.
On June 3, 2002, the defendant moved to dismiss the complaint on the grounds of insufficient service of process and lack of personal jurisdiction and filed a memorandum in support thereof. The plaintiffs filed a memorandum in opposition to the defendant's motion to dismiss on June 11, 2002, to which the defendant replied on June 27, 2002. It is in the defendant's reply that he first argues that the court lacks subject matter jurisdiction over this case.
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Internal quotation marks omitted.) Blumenthal v. Barnes, 261 Conn. 434,442, 804 A.2d 152 (2002). "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the CT Page 13715 allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) Brookridge District Assn. v. Planning Zoning Commission, 259 Conn. 607, 611, 793 A.2d 215 (2002). "Furthermore, it is the law of our courts . . . that [a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." (Internal quotation marks omitted.) Villager Pond, Inc. v.Darien, 54 Conn. App. 178, 183, 734 A.2d 1031 (1999).
"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction." Id., 52. Although the defendant first raised this issue in his reply to the plaintiffs' opposition to his motion to dismiss, "[t]he objection of want of jurisdiction may be made at any time. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings. . . . If at any point, it becomes apparent to the court that such jurisdiction is lacking, the [complaint] must be dismissed." (Internal quotation marks omitted.) Id., 52.
Because the defendant has questioned this court's jurisdiction over the subject matter of this case, whether subject matter jurisdiction exists must be determined before any other analysis. "Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it can move one further step in the case; as any movement is necessarily the exercise of jurisdiction." Federal Deposit Ins. Co. v. Peabody. N.E.,Inc., 239 Conn. 93, 99, 680 A.2d 1321 (1996).
This case can be viewed as involving three separate, albeit interrelated, issues: how Adam and Locia's estates were administered or executed and how Adam's trust was managed and distributed; how Christine's estate was executed; and how Christine's trust was managed and distributed, which includes the defendant's involvement with and activities regarding the partnership. Therefore, this court will address jurisdiction over the subject matter of each in turn.
On February 17, 1982, in Florida, Adam executed a document creating an inter vivos trust and naming Locia, the defendant, and Peter M. Dunbar (Dunbar) as the co-trustees, with Dunbar also serving as independent trustee. (Plaintiffs' Complaint, Exhibit A, page 1.) While he was living, the trustees were to pay Adam the net income from the trust. Upon his death, and after paying to his estate funds to cover, inter alia, funeral expenses, debts and administration fees, the body of the trust CT Page 13716 was to be divided into two trusts: a marital trust, for Locia's benefit, and a residuary trust, for the benefit of Locia and Adam and Locia's children or other issue. Upon Locia's death, the body of the marital trust was to be distributed according to Locia's will, or, if no will, the principal and income were to be added to the residuary trust. Upon Locia's death, the principal of the residuary trust was to be distributed equally to Adam and Locia's children who survived Locia, or, if a child predeceased Locia, to that child's issue. The trust document contained the provision: "This Agreement and the Trust hereby created shall be governed and interpreted in the courts for the laws of the State of Florida." (Plaintiffs' Complaint, Exhibit A, p. 14.)
The current issue is whether this court has jurisdiction over Adam's inter vivos trust and the powers to order an accounting and to determine whether the trust assets were distributed properly. It is well-established that "[t]he settlor [of an inter vivos trust] can select the laws of a state other than that of his domicile that will govern the validity and administration of the trust and thereby assure the ability of his trustee to act." G. Bogert, Trusts and Trustees (2d Ed. 1992) § 233, p. 18. It follows that the settlor can select the laws of his domicile to govern the validity and administration of the trust, and, because "Connecticut case law is clear that the courts will uphold an agreement of the parties to submit to the jurisdiction of a particular tribunal"; Pheonix Leasing, Inc. v. Kosinski, 47 Conn. App. 650, 653,707 A.2d 314 (1998); effect should be given to this selection.
Although the court in Friedman v. Jamison Business Systems, Superior Court, judicial district of Danbury, Docket No. CV 01 0343518 (February 25, 2002, White, J.) (31 Conn.L.Rptr. 473) examined a choice of law provision within a contract, its analysis is helpful here. "The general rule, as demonstrated by several federal cases, is that a forum selection clause conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion. See Boutari and Sons, Wines and Spirits v. Attiki Importersand Distributors, Inc., 22 F.3d 51, 52 (1994). . . ." (Internal quotation marks omitted.) Friedman v. Jamison Business Systems, supra,31 Conn.L.Rptr. 474. "Connecticut case law also appears to impose the requirement that the language of the clause indicate that the forum choice is exclusive. See Dan Perkins Chevrolet v. Auto Tell Services,Inc., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 36508 (March 17, 1992, Flynn, J.); CopelcoLeasing Corp. v. Fox, Superior Court, judicial district of New Haven, Docket No. 324266 (February 7, 1992, DeMayo, J.) (5 Conn.L.Rptr. 8)." (Internal quotation marks omitted.) Friedman v.Jamison Business Systems, supra, 31 Conn.L.Rptr. 474. CT Page 13717
This court concludes that the forum selection clause in Adam's trust agreement confers exclusive jurisdiction over matters arising from the agreement, and interprets the provision to require not only that the agreement and trust created be governed by Florida law, but that the agreement and trust be interpreted in Florida's courts. It is worthy to emphasize that the trust itself, not only the trust agreement, is to be governed by and interpreted in Florida's courts. Because the language of the choice of law provision is broad and extends to the actual trust; seeMessler v. Barnes Group, Inc., Superior Court, judicial district of Hartford, Docket No. CV 96 0560004 (February 1, 1999, Teller, J.) (24 Conn.L.Rptr. 107); this court has no jurisdiction over Adam's inter vivos trust and has no power to order an accounting for or distribution from the trust.
Because both Adam and Locia were residents of Florida when they died, and because the defendant, a Florida resident, was appointed either the sole or co-fiduciary of their estates, this court has no jurisdiction over these estates and has no power to order an accounting of or distributions from the estates. Additionally, because Adam, a resident of Florida, conveyed a parcel of land situated in Florida, this court has no jurisdiction over the conveyance.
It follows, then, that because the court lacks subject matter, count one and count two must be dismissed.
Christine Priest, the mother of the plaintiffs, died on September 20, 1996, as a resident of Norwalk, Connecticut. Her brother, the defendant, was appointed by the Probate Court in Norwalk as the executor of her estate. The estate was settled in 1998. (Defendant's Motion to Dismiss, Exhibit B.) The plaintiffs now seek an accounting of Christine's estate and termination of the defendant as fiduciary for the estate. The plaintiffs, however, have not set forth in the complaint any factual allegations regarding the defendant's management of the estate.
General Statutes § 45a-24 provides in pertinent part: "All orders, judgments and decrees of courts of probate, rendered after notice and from which no appeal is taken, shall be conclusive and shall be entitled to full faith, credit and validity and shall not be subject to collateral attack, except for fraud." The plaintiffs do not claim lack of notice, and none of the parties claim to have appealed the Probate Court's decision under General Statutes § 45a-186.[1]. This case is a separate cause of action, not an appeal, relating to the probated estate. The main purpose of the plaintiffs' action is not to set aside the Probate Court's order, but rather, to establish further rights CT Page 13718 relating to Christine's estate. Except when based in fraud, such a collateral attack is prohibited by § 45a-24.
"The Superior Court, in equitable proceedings, has the power to grant relief against probate judgments only if it concludes that the probate decree attacked is, or at least should be treated as, void because of fraud, mistake or a like equitable ground." (Internal quotation marks omitted.) Dunham v. Dunham, 204 Conn. 303, 328, 528 A.2d 1123 (1987), overruled in part on other grounds, Santopietro v. New Haven,239 Conn. 207, 213 n. 8, 682 A.2d 106 (1996). Although even "a final decree of the Probate Court does not prevent the Superior Court from making inquiry into allegations of fraud," nothing in the record pertaining to Christine's estate reveals any factual allegations from which the court could construe or imply, in the light most favorable to the plaintiffs, fraudulent actions. The only argument the plaintiffs make, in their opposition to the motion to dismiss, is that the defendant mismanaged their grandparents' estates and trusts, thereby denying their mother and themselves assets to which they believe they are entitled; because of this alleged mismanagement, the plaintiffs argue that their mother's estate had a legal claim against the defendant, a claim, the plaintiffs argue, that the defendant did not include in the inventory of their mother's estate in furtherance of his own personal gain. Because the plaintiffs fail to allege facts to support their argument, however, there are no factual allegations from which the court can imply any type of fraud.
In light of the fact that Christine's estate was settled by the Probate Court in 1998, a decision the plaintiffs now attempt to attack collaterally without any showing of fraud, the court is without subject matter jurisdiction pertaining to Christine's estate and has no power to order an accounting of or distribution from the estate.
Connecticut's courts of probate have "jurisdiction of accounts of the actions of trustees of [certain] inter vivos trusts. . . ." General Statutes § 45a-175 (a). The types of inter vivos trusts over which the probate court has jurisdiction are trusts where the trustee or settlor or grantor currently reside in Connecticut, or, "in the case of a deceased settlor or grantor . . . [where] the settlor or grantor resided immediately prior to death." General Statutes § 45a-175. "Any beneficiary of an inter vivos trust may petition a court of probate having jurisdiction under this section for an accounting by the trustee or trustees." General Statutes § 45a-175 (c)(1). The jurisdiction of the probate court is clearly limited. "A court of probate shall have jurisdiction to require an accounting under subdivision (1) of subsection (c) of this section if (A) a trustee of the trust resides in its district CT Page 13719 . . . (C) any of the trust assets are maintained or evidence of intangible property of the trust are situated in the district, or (D) the settlor resides in the district, or, in the case of a deceased settlor, resided in the district immediately prior to death." General Statutes § 45a-175 (c)(2).
The probate court's jurisdiction, however, is not exclusive. "Prior to 1963 the Superior Court, as the only court of general equitable jurisdiction, had exclusive jurisdiction over the final settlement of the accounts of inter vivos trusts. See [Preston v. Preston, 102 Conn. 96,121, 128 A. 292 (1925)]. The enactment of an amendment to General Statutes § 45-267 [now § 45a-175] providing that such accounts "may' be submitted to the Probate Court was intended to give the probate courts jurisdiction of this subject matter concurrent with the Superior Court, as in the case of testamentary trusts. Public Acts 1963, n. 480; see Phillips v. Moeller, [147 Conn. 482, 489, 163 A.2d 95 (1960).] It was not intended to oust the Superior Court of its historical jurisdiction in this field. . . ." Second National Bank of New Haven, Trustee v. HarrisTrust and Savings Bank, 29 Conn. Sup. 275, 287, 283 A.2d 226 (1971). Therefore, it follows that Connecticut's Superior Courts have jurisdiction over the same types of inter vivos trusts.
Christine and the defendant entered into a trust agreement on April 6, 1984. (Plaintiffs' Complaint, Exhibit C, p. 1.) Christine, the grantor, designated herself and the defendant as co-trustees of the revocable inter vivos trust created by the trust document; at the time the agreement was signed, Christine was a resident in Connecticut and the defendant was a resident of Florida. While Christine was living, the trustees were to pay her the net income, and, if appropriate, the principal, from the trust fund. Upon Christine's death, the principal was to remain in trust for her children, or their descendants, until her children reached thirty years of age, when the trust would terminate. Upon termination, the principal of the trust was to be distributed to her children or their descendants. If Christine's children predeceased her, leaving no issue, the balance of the trust was to be distributed to the defendant or his issue should the defendant predecease Christine. Unfortunately, Christine died in 1996 while a resident of Norwalk, Connecticut. Julia Priest reached thirty years of age on October 9, 1994. Alexander Priest reached thirty years of age on June 16, 1997.[2]
Revocable inter vivos trusts are designed to avoid probate. See G. Bogert, Trusts and Trustees (2d Ed. 1992) § 233, p. 18. As such, trust assets are not usually included in the decedent's probated estate. Neither the plaintiffs nor the defendant have offered any evidence that the trust was included in Christine's probated estate. In fact, counts CT Page 13720 three through seven of the complaint contain allegations pertaining to the management of and distributions from Christine's trust, and as the defendant points out, the "claims set forth in the Plaintiffs' Complaint do not arise out of the Defendant's role as executor of Christine Priest's estate . . . (Defendant's Memorandum of Law in Support of Motion to Dismiss, p. 7.)
The plaintiffs are clearly beneficiaries of Christine's inter vivos trust. Christine, the settlor of the trust, resided in Norwalk, Connecticut immediately prior to death. See General Statutes § 45a-175. Additionally, pursuant to General Statutes § 45a-175 (c)(1), to require an accounting, the court must find that: "(A) The beneficiary has an interest in the trust sufficient to entitle him to an accounting, (B) cause has been shown that an accounting is necessary, and (C) the petition is not for the purpose of harassment." As sole beneficiaries of their mother's trust, the plaintiffs have sufficient interest in the trust. This court finds that, through documents submitted pertaining to the partnership created by the defendant and the defendant as trustee for Christine's trust, cause has been shown that an accounting is necessary. (Plaintiffs' Complaint, Exhibits C-E; Plaintiffs' Memorandum in Opposition to Motion to Dismiss, Exhibits A-B.) There is nothing in the record that indicates that the plaintiffs have commenced this action to harass the defendant. Therefore, under General Statutes § 45a-175, the Probate Court in Norwalk has jurisdiction to require an accounting of Christine's inter vivos trust. Likewise, the Superior Court in the judicial district of Stamford/Norwalk has jurisdiction to require an accounting of Christine's inter vivos trust.
Section § 45a-175 (f) provides: "Upon the allowance of any such account, the court shall determine the rights of the fiduciaries . . . rendering the account and of the parties interested in the account. . . ." Therefore, the Superior Court also has jurisdiction to determine the plaintiffs' and defendant's rights regarding Christine's trust.
In counts five through seven of the complaint, the plaintiffs' allege violation of trustee obligations, failure to distribute profits from the partnership, and diversion of partnership and trust funds. Although not specifically named as such, this court interprets these allegations to be claims of a breach of fiduciary duty. "[T]he interpretation of pleadings is always a question of law for the court. . . . We have pointed out that [t]he burden [is] upon the pleaders to make such averments that the material facts should appear with reasonable certainty; and for that purpose [the pleaders are] allowed to use their own language. Whenever that language fails to define clearly the issues in dispute, the court will put upon it such reasonable construction as will give effect to the CT Page 13721 pleadings in conformity with the general theory which it was intended to follow, and do substantial justice between the parties." (Internal quotation marks omitted.) United Components, Inc. v. Wdowiak,239 Conn. 259, 264, 384 A.2d 693 (1996). "Because the defendant was a [trustee], he owed a fiduciary duty to [the plaintiffs], regardless of whether that duty ha[s] been specifically so labeled in the complaint. See Practice Book § 10-4 . . . ("unnecessary to allege any . . . duty which the law implies from the facts pleaded')." Murphy v. Wakelee,247 Conn. 396, 407, 721 A.2d 1181 (1998).
The Superior Court has jurisdiction over claims for breach of fiduciary duty. It follows that the Superior Court has jurisdiction over claims for breach of fiduciary duty by a trustee for an inter vivos trust. Furthermore, "[u]nder existing law, the question of whether there are adequate grounds for the removal of a trustee is addressed to the sound discretion of the trial court. . . ." Jackson v. Conland, 178 Conn. 52,61, 420 A.2d 898 (1979).
Therefore, based on the reasoning above, this court has jurisdiction over the management of and distributions from Christine's trust. Because the partnership is so connected to Christine's trust, jurisdiction extends to the management of the partnership.
The claims pertaining to the management of Adam and Locia's trusts and estates, Adam's conveyance of land situated in Florida, and the management of Christine's estate are dismissed for lack of subject matter jurisdiction; thus, the only question remaining before this court is whether the service of process effected on the defendant was proper.
The only counts of the complaint that remain are counts three through seven, which pertain to the management of and distribution from Christine's trust, and the alleged breach of fiduciary duty owed to the plaintiffs by the defendant. To effectuate service of process on the defendant, the plaintiffs served the Judge of the Probate Court of Norwalk with the writ, summons and complaint pursuant to General Statutes §§ 52-60 and 52-61. This was improper.
"[T]he Superior Court . . . may exercise jurisdiction over a person only if that person has been properly served with process . . . [unless the person] has waived any objection to the court's exercise of personal jurisdiction." (Internal quotation marks omitted.) Kim v. Magnotta,249 Conn. 94, 101-102, 733 A.2d 809 (1999). "[Practice Book § 10-30] specifically and unambiguously provides that any claim of lack of jurisdiction over the person as a result of an insufficiency of service of process is waived unless it is raised by a motion to dismiss filed CT Page 13722 within thirty days in the sequence required by Practice Book §10-6[3]. . . ." Pitchell v. Hartford, 247 Conn. 422, 433, 722 A.2d 797
(1999). The defendant entered an appearance in this case on May 14, 2002, and moved to dismiss the case on June 3, 2002. No other pleadings were filed between the appearance and the motion to dismiss. Therefore, the defendant has complied with Practice Book § 10-30 and § 10-6.
"The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) Schiano v. BlissExterminating Co., 260 Conn. 21, 34, 792 A.2d 835 (2002). After an exhaustive search, the court has discovered no case law interpreting §§ 52-60 and 52-61. A review of the legislative history has also not revealed any information which would aid in the analysis. Therefore, the court must embark on its own interpretation of the statutory language.
Section 52-61, entitled "Service upon nonresident fiduciaries," provides: "Process in civil actions against a nonresident executor, administrator, conservator, guardian or trustee, in his representative capacity, or in his individual capacity in any action founded upon or arising from his acts or omissions as such executor, administrator, conservator, guardian or trustee, may be served by leaving a true and attested copy thereof with the judge of probate in the district where the estate is in settlement; and such judge shall forthwith give notice thereof to such executor, administrator, conservator, guardian or trustee." (Emphasis added.) The emphasized words are important for two reasons. First, they presuppose that an estate exists. Second, they presuppose that the estate is currently in settlement, as denoted by the use of the present tense.[4] The remaining claims in this case pertain to the management of an inter vivos trust, which was not part of Christine's estate, an estate which was settled in 1998. Therefore, the plaintiffs could not effectuate service of process under § 52-61.
Section 52-60, entitled "Judge of probate attorney for nonresident fiduciary," provides, in pertinent part: "(a) No appointment of a nonresident of this state as an executor, administrator, conservator, guardian or trustee may take effect until the person so appointed has filed in the court of probate making the appointment a certificate, CT Page 13723 acknowledged before the judge of the court of probate . . . to be his attorney upon whom all process in any action or proceeding described in section 52-61. . . ." (Emphasis added.) This section presupposes that the judge of the probate court is appointing a nonresident as an executor, administrator, conservator, guardian or trustee. In this case, the defendant was designated as a trustee of an inter vivos trust; he was not appointed to any fiduciary position by the judge of the probate court. Section 52-60 (b) states that the appointment of the probate judge as the fiduciary's attorney "shall continue in force as long as any liability remains outstanding against him as a fiduciary and as long as he has any estate in his possession as a fiduciary." (Emphasis added.) General Statutes § 52-60 (b). This section, by its language, would require that the defendant retain at least some portion of the estate, in which, as stated above, the inter vivos trust was not included. Therefore, the plaintiffs could not effectuate service of process upon the defendant by serving the judge of the probate court under § 52-60.
Based on the foregoing, because the plaintiffs have not properly served the defendant with process, the complaint must be dismissed in its entirety.
D'Andrea, JTR